ELLIS GEORGE LLP
Eric M. George (State Bar No. 166403)
  egeorge@ellisgeorge.com
Katherine A. Petti (State Bar No. 339052)
  kpetti@ellisgeorge.com
Christopher T. Berg (State Bar No. 344565)
  cberg@ellisgeorge.com
2121 Avenue of the Stars, 30th Floor
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697

Attorneys for Plaintiffs Fox Cable
Network Services, LLC and Tubi, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOX CABLE NETWORK SERVICES, LLC, and TUBI, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> GRUPO LAUMAN HOLDING, S. DE R.L. DE C.V., MEXICO SPORTS DISTRIBUTION LLC, ALTENER, S.A. DE C.V., COMTELSAT, S.A. DE C.V., and MEDIA DEPORTES MEXICO, S. DE R.L. DE C.V., <br><br> Defendants. | Case No.: 2:25-cv-02444 <br><br> **COMPLAINT FOR:** <br><br> 1. **BREACH OF CONTRACT – PACHUCA WOMEN'S SUBLICENSE** <br> 2. **BREACH OF CONTRACT – PACHUCA MEN'S SUBLICENSE** <br> 3. **BREACH OF CONTRACT – LEON WOMEN'S SUBLICENSE** <br> 4. **BREACH OF CONTRACT – LEON MEN'S SUBLICENSE** <br> 5. **TORTIOUS INTERFERENCE WITH CONTRACT** <br> 6. **CIVIL CONSPIRACY** <br> 7. **VIOLATION OF PENAL CODE § 496(a)** <br><br> **DEMAND FOR JURY TRIAL** <br><br> Trial Date:  None Set |

# (REDACTED VERSION – PROPOSED TO BE FILED UNDER SEAL)

2540583

COMPLAINT

Plaintiffs Fox Cable Network Services, LLC and Tubi, Inc. (collectively, "Fox" or "Plaintiffs") allege as follows:

## INTRODUCTION

1. Soccer is consistently ranked the most popular sport in the world. Globally-recognized championships and major leagues like La Liga and the English Premiere League attract billions of viewers annually.

2. CF Pachuca and Club Leon are top-tier soccer teams in Mexico. CF Pachuca alone has seven Liga MX titles and six CONCACAF Champions Cup titles. The rights to streaming and broadcasting top teams like CF Pachuca and Club Leon are valuable.

3. Plaintiff Fox Cable Network Services, LLC, which produces and distributes media content including soccer matches, sought to expand its presence in the Mexican sports broadcasting market, including soccer.

4. As part of that effort, Fox interacted in two broad ways with Defendants, a consortium of entities engaged in producing and distributing sports media.

5. First, Fox engaged in discussions with Defendants to buy a business unit that produced and distributed sports media in Mexico. Second, as negotiations for that purchase took place, Fox, with Defendants' knowledge and express written consent, contracted with CF Pachuca and Club Leon to license rights for soccer-related media directly from those clubs, and then sublicensed a subset of those rights to Defendants.

6. But Fox soon discovered gamesmanship not just on the soccer fields, but also in how Defendants handled their business commitments.

7. Defendants' malfeasance included their failure to pay a single dollar of the $13 million owed under their sublicense agreements with Fox.

8. Similar conduct was commonplace in how Defendants conducted business. Although they once held licenses to produce and distribute a variety of

2540583

-2-

COMPLAINT

sports games within the territory of Mexico, Defendants have lost many of those rights because they have failed to pay for their licenses.

9. After Defendants failed to pay Fox for their sublicenses, among other reasons, Fox terminated Defendants' sublicense agreements and the negotiations to acquire Defendants' business unit ceased. Soon after, Defendants executed a scheme to tortiously disrupt, interfere with, obstruct, and render valueless Fox's business relationships concerning Mexican soccer. This scheme included tortiously interfering with Fox's contracts—including the sublicenses that Defendant Mexico Sports Distribution LLC had entered into with Fox—by directing Mexico Sports Distribution to make no payments on those sublicenses.

10. These actions and others, as set forth below, have required Fox to bring this action.

### PARTIES

11. Plaintiff Fox Cable Network Services, LLC ("Fox Cable") is a Delaware limited liability company based in California  whose sole member is Foxcorp Holdings LLC.  Foxcorp Holdings LLC's sole member is Fox Corporation, which is incorporated in Delaware and maintains its principal place of business in New York, New York.  Fox Cable is a citizen of Delaware and New York.

12. Plaintiff Tubi, Inc. ("Tubi") is incorporated in Delaware and maintains its principal place of business in San Francisco, California.  Tubi is a citizen of Delaware and California.

13. Defendant Grupo Lauman Holding, sociedad de responsabilidad limitada de capital variable, is an entity formed under the laws of Mexico that can own property, make contracts, transact business, and litigate in its own name, and is recognized as a judicial person under the laws of Mexico.  Defendant Grupo Lauman Holding is a citizen of Mexico.

14. Defendant Altener, sociedad anonima de capital variable, is an entity formed under the laws of Mexico that can own property, make contracts, transact

business, and litigate in its own name, and is recognized as a judicial person under the laws of Mexico. On information and belief, Defendant Altener is a majority-owned subsidiary of Defendant Grupo Lauman Holding. Defendant Altener is a citizen of Mexico.

15. Defendant Mexico Sports Distribution LLC is a limited liability company based in Coral Gables, Florida, whose sole member, on information and belief, is Defendant Altener. Defendant Mexico Sports Distribution is a citizen of Mexico.

16. Defendant Media Deportes Mexico, sociedad de responsabilidad limitada de capital variable, is an entity formed under the laws of Mexico that can own property, make contracts, transact business, and litigate in its own name, and is recognized as a judicial person under the laws of Mexico. On information and belief, Defendant Media Deportes Mexico is a subsidiary of Defendant Altener. Defendant Media Deportes Mexico is a citizen of Mexico.

17. Defendant Comtelsat, sociedad anonima de capital variable, is an entity formed under the laws of Mexico that can own property, make contracts, transact business, and litigate in its own name, and is recognized as a judicial person under the laws of Mexico. On information and belief, Defendant Comtelsat is a wholly-owned subsidiary of Defendant Grupo Lauman Holding. Defendant Comtelsat is a citizen of Mexico.

18. On information and belief, Defendants Altener, Mexico Sports Distribution, Media Deportes Mexico, and Comtelsat are, and at all times were, mere shells, instrumentalities, and conduits through which each of the Defendants carried on their business through and with one another, with Defendant Grupo Lauman Holding exercising control and dominance over the other Defendants. For example, ██████████████████████████████████████████████████████ ████████████████████████████████████████████ ████████ In addition, on information and belief, Defendant Grupo Lauman

2540583

-4-

COMPLAINT

Holding directed Defendant Mexico Sports Distribution to breach its contracts with Plaintiff Fox Cable, and Mexico Sports Distribution complied with that directive.

19. On information and belief, Defendants use the same employees and disregard corporate formalities. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

20. Between all Defendants there exists, and at all times has existed, a unity of interest and ownership to such an extent that any individuality or separateness between Defendants does not exist. Adherence to the fiction of the separate existence of the Defendants as entities distinct from one another would permit the abuse of the corporate privilege and promote injustice. An inequitable result would arise if Mexico Sports Distribution's breaches of contract were treated as Mexico Sports Distribution acting alone, when, to the contrary, those breaches occurred at the direction of the other Defendants in an effort to disrupt Fox's ability to pursue commercial interests in Mexico and the United States. Defendants are alter egos of one another.

## JURISDICTION AND VENUE

21. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) because Plaintiffs, who are citizens of various states, are diverse from Defendants, who are all citizens of Mexico.

22. Venue is proper in this district under 28 U.S.C. § 1391(b) because it is the district in which a substantial part of the actions giving rise to the claims occurred. Venue is also proper because the agreements that are the subject of this action contain a forum selection clause that set venue in the County of Los Angeles, California.

23. This Court has personal jurisdiction over Mexico Sports Distribution because it submitted to the jurisdiction of all state and federal courts located in the County of Los Angeles, California by signing the agreements that are the subject of this action.

24. This Court has personal jurisdiction over Grupo Lauman Holding, Altener, Media Deportes Mexico, and Comtelsat because they are alter egos of Mexico Sports Distribution, and alter egos of one another.

25. This Court has personal jurisdiction over all Defendants because they purposefully directed their tortious conduct to harm Plaintiffs within California.

## FACTUAL ALLEGATIONS

**A.    Mexico Sports Distribution's Breach of the Soccer Sublicenses**

26. As discussed previously, two of the most successful soccer teams in all of CONCACAF, and certainly in Mexico, are CF Pachuca and Club Leon.  Fox sought to expand its presence in the Mexican soccer market and did so by securing license agreements with these successful and celebrated franchises.

27. Before Fox Cable obtained licensing rights from CF Pachuca and Club Leon, Defendants held licensing rights from those clubs under agreements dated May 27, 2014.  Those agreements expired in June 2024.

28. Before entering into any agreements with CF Pachuca or Club Leon, Fox informed Defendants On June 13, 2024, Defendant Grupo Lauman Holding, on behalf of Defendants, signed a letter agreement (the "Waiver Agreement") with Fox acknowledging the following:



A copy of the Waiver Agreement is attached as Exhibit A.

29. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Fox successfully negotiated rights deals with CF Pachuca and Club Leon.

30. As a result of those efforts, Fox Cable holds a license for the production, telecast, distribution, exhibition, and related rights for certain matches played by CF Pachuca through the last match of the 2029 Liga MX Closing Tournament (the "Pachuca Men's Rights"). Fox Cable also holds such a license for

the rights to the Pachuca women's club (the "Pachuca Women's Rights").

31.    Fox Cable also holds a license for the production, telecast, distribution, exhibition, and related rights for certain matches played by Club Leon through the last match of the 2029 Liga MX Closing Tournament (the "Leon Men's Rights"). Fox Cable also holds such a license for the women's club (the "Leon Women's Rights").

32.    The Pachuca Men's and Women's Rights, and the Leon Men's and Women's Rights (collectively, the "Soccer Licenses") extend to all territories in the world except the United States and Canada.

33.    Fox Cable is permitted to sublicense the Soccer Licenses.

34.    These Soccer Licenses, and the rights they represent, are worth millions of dollars.

35.    Recognizing that value, Fox Cable entered into a July 1, 2024 sublicense agreement with Mexico Sports Distribution called "Rights License and Production Agreement" for the Pachuca Men's Rights.  Fox Cable granted to Mexico Sports Distribution a sublicense for certain Pachuca Men's Rights within the territory of Mexico during the 2024/2025 Liga MX Regular Season.  In exchange, Mexico Sports Distribution agreed to pay Fox Cable a sublicense fee of $12,000,000, beginning with an initial payment of $2,000,000 due on August 30, 2024 and followed by ten monthly installments of $1,000,000 due on the first of each month.  A copy of the Rights License and Production Agreement for the Pachuca Men's Rights signed by Mexico Sports Distribution is attached as Exhibit B ("Pachuca Men's Sublicense").

36.    As to the Pachuca Women's rights, Fox Cable entered into a July 1, 2024 sublicense agreement with Mexico Sports Distribution called "Rights License and Production Agreement." Fox Cable granted to Mexico Sports Distribution a sublicense for certain Pachuca Women's Rights within the territory of Mexico during the 2024/2025 Liga MX Femenil Season.  In exchange, Mexico Sports

Distribution agreed to pay Fox Cable a sublicense fee of $500,000, beginning with an initial payment of $200,000 due on August 30, 2024 and followed by three monthly installments of $100,000 due on the first of each month.  A copy of the Rights License and Production Agreement for the Pachuca Women's Rights signed by Mexico Sports Distribution is attached as Exhibit C ("Pachuca Women's Sublicense").

37.     As to the Leon Men's Rights, Fox Cable entered into a July 1, 2024 sublicense agreement with Mexico Sports Distribution called "Rights License and Production Agreement" for the Leon Men's Rights.  Fox Cable granted to Mexico Sports Distribution a sublicense for certain Leon Men's Rights within the territory of Mexico during the 2024/2025 Liga MX Regular Season.  In exchange, Mexico Sports Distribution agreed to pay Fox Cable a sublicense fee of $12,000,000, beginning with an initial payment of $2,000,000 due on August 30, 2024 and followed by ten monthly installments of $1,000,000 due on the first of each month. A copy of the Rights License and Production Agreement for the Leon Men's Rights signed by Mexico Sports Distribution is attached as Exhibit D ("Leon Men's Sublicense").

38.     As to the Leon Women's Rights, Fox Cable entered into a July 1, 2024 sublicense agreement with Mexico Sports Distribution called "Rights License and Production Agreement," which granted to Mexico Sports Distribution a sublicense for certain Leon Women's Rights within the territory of Mexico during the 2024/2025 Liga MX Femenil Season.  In exchange, Mexico Sports Distribution agreed to pay Fox Cable a sublicense fee of $500,000, beginning with an initial payment of  $200,000 due on August 30, 2024 and followed by three monthly installments of $100,000 due on the first of each month.  A copy of the Rights License and Production Agreement for the Leon Women's Rights signed by Mexico Sports Distribution is attached as Exhibit E ("Leon Women's Sublicense").

/ / /

39. Mexico Sports Distribution did not pay Fox Cable the $4,400,000 in initial payment fees that were due on August 30, 2024 under the Pachuca Women's Sublicense, Pachuca Men's Sublicense, Leon Women's Sublicense, and Leon Men's Sublicense (collectively, the "Soccer Sublicenses"). Mexico Sports Distribution also did not pay Fox Cable any subsequent monthly installment fees due under the Soccer Sublicenses.

40. On November 9, 2024, Mexico Sports Distribution received an invoice from Fox Cable for the outstanding sublicense fees owed under the Soccer Sublicenses. The invoice was for $13,000,000, which included all initial payments and several monthly installment payments owed under the Soccer Sublicenses.

41. Mexico Sports Distribution is required to pay sublicense fees under the Soccer Sublicenses.

42. Mexico Sports Distribution has not paid any initial payment fee, any monthly installment fee, or any portion of the November 2024 sublicense invoice, in breach of the Soccer Sublicenses. Mexico Sports Distribution has not paid a single dollar of the millions of dollars owed under the Soccer Sublicenses.

43. As a result of that breach, Fox Cable has been damaged in an amount to be proven at trial, but no less than $13,000,000.

44. Fox Cable fully performed under the Soccer Sublicenses, or else Fox Cable has been excused from performance as a result of Mexico Sports Distribution's breach.

**B.    Defendants' Scheme to Disrupt Plaintiffs' Business Relationships**

45. Defendants are either alter egos of one another or, at minimum, are close-knit collaborators that have conspired to harm and obstruct Plaintiffs' ability to conduct commercial activities related to Mexican soccer in Mexico and the United States.

46. In May 2024, Fox Cable and its affiliates made an offer to acquire a sports-media business unit from Defendants.

2540583

-10-

COMPLAINT

47.     As Fox conducted diligence into that business unit, on information and belief, Defendants conspired with one another to disrupt, interfere, obstruct, and hinder Fox's business relationships and commercial activities relating to Mexican soccer unless Fox did business with Defendants.

48.     On November 9, 2024, after protracted negotiations, Fox sent Grupo Lauman Holding correspondence explaining that if its acquisition offer was not accepted promptly then all discussions concerning the offer would be closed ("Conditional Termination Letter").  Fox's $13,000,000 invoice for sublicense fees owed under the Soccer Sublicenses accompanied the Conditional Termination Letter sent to Grupo Lauman Holding.

49.     Reeling from a now-perceived threat to their position in the Mexican soccer market, on November 11, 2024, Grupo Lauman Holding responded to Fox's Conditional Termination Letter.  In that correspondence, Grupo Lauman Holding accused Fox of acting in bad faith and engaging in unlawful acts.  Without basis, the letter contained threats that Defendants would undertake efforts to prevent Fox from participating in the Mexican soccer market.

50.     Defendants did not just threaten with their words—they took action.  For example, after receiving Fox's Conditional Termination Letter, on information and belief, Grupo Lauman Holding, Altener, Media Deportes Mexico, and Comtelsat directed and induced Mexico Sports Distribution not to pay Fox's $13,000,000 invoice for the fees owed under the Soccer Sublicenses.

51.     In furtherance of Defendants' conspiracy, on information and belief, Mexico Sports Distribution complied with Defendants' direction and did not pay the invoice for the fees owed under the Soccer Sublicenses.  That conduct breached the contractual relationship created by the Soccer Sublicenses between Mexico Sports Distribution and Fox Cable.

52.     Defendants' conduct was designed to cause, and did cause, Plaintiffs to suffer no less than $13,000,000 in damages.

2540583

-11-

COMPLAINT

53.     In December 2024, Fox Cable notified Mexico Sports Distribution and Grupo Lauman Holding that Fox Cable had terminated the Soccer Sublicenses, in accordance with the terms of those agreements.  Fox then began efforts to gain the economic benefit of the Soccer Licenses itself by broadcasting matches within the territory of Mexico using the Tubi platform.

54.     Because of the abovementioned actions, and other conduct, carried out by Defendants to disrupt Fox's business, Fox sought and obtained a provisional injunction from a Mexican court against Defendants.  The provisional injunction orders Defendants and their affiliates to refrain from initiating or, if already initiated, immediately cease any acts or behaviors that prevent, interfere with, obstruct, hinder, or in any way limit the fulfillment of the corporate purpose of Plaintiffs Fox Cable Network Services LLC and Tubi, Inc. or the commercial activities that they are carrying out or will carry out in Mexico.

## FIRST CLAIM FOR RELIEF

**Breach of Contract – Pachuca Women's Sublicense**

**Against Mexico Sports Distribution, and all other Defendants as alter egos**

55.     Plaintiffs incorporate allegations 1 through 44 as if fully set forth herein.

56.     Fox Cable and Mexico Sports Distribution entered into the Pachuca Women's Sublicense for meaningful consideration.  The Pachuca Women's Sublicense is a valid and enforceable contract.

57.     Mexico Sports Distribution has breached the Pachuca Women's Sublicense by failing to pay the initial payment fee, any monthly installment fee, or any portion of the November 2024 sublicense fee invoice it received from Fox Cable pursuant to the terms of the Pachuca Women's Sublicense.

58.     As a result of that breach, Fox Cable has been damaged in an amount to be proven at trial.

/ / /

2540583

-12-

59. Fox Cable has fully performed under the Pachuca Women's Sublicense, or else Fox Cable has been excused from performance as a result of Mexico Sports Distribution's breach.

60. All Defendants are liable for Mexico Sports Distribution's breach because they are alter egos of Mexico Sports Distribution.

## SECOND CLAIM FOR RELIEF

### Breach of Contract – Pachuca Men's Sublicense

### Against Mexico Sports Distribution, and all other Defendants as alter egos

61. Plaintiffs incorporate allegations 1 through 44 as if fully set forth herein.

62. Fox Cable and Mexico Sports Distribution entered into the Pachuca Men's Sublicense for meaningful consideration. The Pachuca Men's Sublicense is a valid and enforceable contract.

63. Mexico Sports Distribution has breached the Pachuca Men's Sublicense by failing to pay the initial payment fee, any monthly installment fee, or any portion of the November 2024 sublicense fee invoice it received from Fox Cable pursuant to the terms of the Pachuca Men's Sublicense.

64. As a result of that breach, Fox Cable has been damaged in an amount to be proven at trial.

65. Fox Cable has fully performed under the Pachuca Men's Sublicense, or else Fox Cable has been excused from performance as a result of Mexico Sports Distribution's breach.

66. All Defendants are liable for Mexico Sports Distribution's breach because they are alter egos of Mexico Sports Distribution.

/ / /

/ / /

/ / /

/ / /

2540583

-13-

COMPLAINT

## THIRD CLAIM FOR RELIEF

### Breach of Contract – Leon Women's Sublicense

### Against Mexico Sports Distribution, and all other Defendants as alter egos

67.    Plaintiffs incorporate allegations 1 through 44 as if fully set forth herein.

68.    Fox Cable and Mexico Sports Distribution entered into the Leon Women's Sublicense for meaningful consideration.  The Leon Women's Sublicense is a valid and enforceable contract.

69.    Mexico Sports Distribution has breached the Leon Women's Sublicense by failing to pay the initial payment fee, any monthly installment fee, or any portion of the November 2024 sublicense fee invoice it received from Fox Cable pursuant to the terms of the Leon Women's Sublicense.

70.    As a result of that breach, Fox Cable has been damaged in an amount to be proven at trial.

71.    Fox Cable has fully performed under the Leon Women's Sublicense, or else Fox Cable has been excused from performance as a result of Mexico Sports Distribution's breach.

72.    All Defendants are liable for Mexico Sports Distribution's breach because they are alter egos of Mexico Sports Distribution.

## FOURTH CLAIM FOR RELIEF

### Breach of Contract – Leon Men's Sublicense

### Against Mexico Sports Distribution, and all other Defendants as alter egos

73.    Plaintiffs incorporate allegations 1 through 44 as if fully set forth herein.

74.    Fox Cable and Mexico Sports Distribution entered into the Leon Men's Sublicense for meaningful consideration.  The Leon Men's Sublicense is a valid and enforceable contract.

/ / /

2540583

-14-
COMPLAINT

75. Mexico Sports Distribution has breached the Leon Men's Sublicense by failing to pay the initial payment fee, any monthly installment fee, or any portion of the November 2024 sublicense fee invoice it received from Fox Cable pursuant to the terms of the Leon Men's Sublicense.

76. As a result of that breach, Fox Cable has been damaged in an amount to be proven at trial.

77. Fox Cable has fully performed under the Leon Men's Sublicense, or else Fox Cable has been excused from performance as a result of Mexico Sports Distribution's breach.

78. All Defendants are liable for Mexico Sports Distribution's breach because they are alter egos of Mexico Sports Distribution.

**FIFTH CLAIM FOR RELIEF**

**Tortious Interference With Contract**

**Against Grupo Lauman Holding, Comtelsat, Altener, and**

**Media Deportes Mexico**

79. Plaintiffs incorporate allegations 1 through 54 as if fully set forth herein.

80. The Soccer Sublicenses were valid contracts between Fox Cable and Mexico Sports Distribution.

81. Grupo Lauman Holding, Comtelsat, Altener, and Media Deportes Mexico had knowledge of the Soccer Sublicenses based on, among other things, ███ ██████████ and Fox Cable's delivery of the sublicense fee invoice to Grupo Lauman Holding on November 9, 2024.

82. Grupo Lauman Holding, Comtelsat, Altener, and Media Deportes Mexico, on information and belief, directed and induced Mexico Sports Distribution not to pay any sublicense fee owed under the Soccer Sublicenses for the purpose of inducing a breach of the Soccer Sublicenses or otherwise disrupting Fox Cable's contractual relationship with Mexico Sports Distribution.

83.    Mexico Sports Distribution did not pay any sublicense fee owed under the Soccer Sublicenses, including the November 2024 sublicense fee invoice in breach of the Soccer Sublicenses.

84.    As a result of Mexico Sports Distribution's breach, Fox Cable suffered damages in an amount to be proven at trial, but no less than $13,000,000.

85.    Grupo Lauman Holding, Comtelsat, Altener, and Media Deportes Mexico acted with malice, fraud, or oppression by intentionally interfering with Fox Cable's contract with Mexico Sports Distribution for the purpose of harming Fox, causing a breach of the Soccer Sublicenses, and hindering Fox's commercial activities in Mexico and the United States.  Fox Cable is therefore entitled to punitive damages.

## SIXTH CLAIM FOR RELIEF

### Civil Conspiracy

### Against All Defendants

86.    Plaintiffs incorporate allegations 1 through 54 as if fully set forth herein.

87.    Defendants entered into a conspiracy to disrupt Fox's economic relationships in the Mexican soccer market and obstruct Fox's ability to conduct commercial activities related to Mexican soccer.

88.    Defendants acted in furtherance of the conspiracy by directing Mexico Sports Distribution not to pay any sublicense fee owed under the Soccer Sublicenses for the purpose of inducing a breach of the Soccer Sublicenses.

89.    Defendants successfully induced a breach of the Soccer Sublicences because Mexico Sports Distribution did not pay any sublicense fee owed under the Soccer Sublicenses.

90.    Fox was damaged as a result of acts taken by Defendants in furtherance of the conspiracy in an amount to be proven at trial.

/ / /

2540583

-16-

COMPLAINT

91. As a result of their entry into a conspiracy to tortiously interfere with Fox's contracts, each Defendant is responsible as a joint tortfeasor for all damages ensuing from each wrongful act made in furtherance of the conspiracy, irrespective of whether or not each Defendant was a direct actor and regardless of the degree of each Defendant's activity.

## SEVENTH CLAIM FOR RELIEF

### Violation of California Penal Code § 496(a)

### Against Mexico Sports Distribution, and all other Defendants as alter egos

92. Plaintiffs incorporate allegations 1 through 44 as if fully set forth herein.

93. Mexico Sports Distribution executed a scheme to defraud Fox Cable into providing the Soccer Sublicenses without Mexico Sports Distribution ever paying for them.

94. By signing the Soccer Sublicenses, Mexico Sports Distribution represented to Fox Cable that it would pay the sublicense fees owed under the Soccer Sublicenses.

95. Those representations were knowingly false. At the time it signed the Soccer Sublicenses, Mexico Sports Distribution did not intend to pay Fox Cable the sublicense fees owed under the Soccer Sublicenses. That intent is evident by Mexico Sports Distribution never paying a dollar for the Soccer Sublicenses, including the $4,400,000 in initial payments that became due shortly after signing them.

96. Mexico Sports Distribution made those false representations to defraud Fox Cable into giving Mexico Sports Distribution production, distribution, and other rights granted by the Soccer Sublicenses without Mexico Sports Distribution ever having to pay for those rights.

97. In reliance on those false representations, Fox Cable transferred the rights granted by the Soccer Sublicenses to Mexico Sports Distribution.

2540583

-17-

COMPLAINT

98.     Mexico Sports Distribution used the rights granted under the Soccer Sublicenses for its own economic gain.  Between the time Mexico Sports Distribution entered into the Soccer Sublicenses in July 2024 to the time Fox Cable terminated the Soccer Sublicenses in December 2024, Mexico Sports Distribution benefited financially from five months of Fox Cable's Soccer Sublicenses.  But Mexico Sports Distribution never paid a single dollar of the sublicense fees it owed under the Soccer Sublicenses.

99.     As reflected in the Soccer Sublicenses and the November 2024 sublicense fee invoice, the value of the Soccer Sublicenses during that July 2024 to December 2024 period is at least $13,000,000.

100.    Mexico Sports Distribution's conduct constitutes theft of the Soccer Sublicences by false pretense.

101.    Mexico Sports Distribution knew that it procured the Soccer Sublicenses through theft by false pretense.  That knowledge is reflected in its decision to never pay a dollar owed under the Soccer Sublicenses, including the $13,000,000 owed in the November 2024 sublicense fee invoice.

102.    Mexico Sports Distribution withheld those funds from Fox Cable knowing that it was doing so in furtherance of its scheme to obtain the Soccer Sublicenses without paying for them.

103.    As a result of Mexico Sports Distribution's fraudulent scheme, Fox Cable has been injured in an amount to be proven at trial but no less than $13,000,000.

104.    Mexico Sports Distribution's conduct violates California Penal Code § 496(a).  As a result, Fox Cable is entitled to actual and statutory treble damages, the costs of suit, and reasonable attorneys' fees pursuant to California Penal Code § 496(c), in an amount to be determined by evidence, but in no event less than $39,000,000 (treble $13,000,000).

/ / /

105.   All Defendants are liable for Mexico Sports Distribution's conduct because they are alter egos of Mexico Sports Distribution.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for judgment against Defendants on all claims, and requests a judgment providing the following relief:

1.   Judgment in Plaintiffs' favor and against Defendants on all causes of action;

2.   For general, compensatory, expectation, and consequential damages of no less than $13,000,000;

3.   For punitive damages;

4.   For treble damages of no less than $39,000,000;

5.   For attorneys' fees in an amount to be determined according to proof;

6.   For pre-judgment and post-judgment interest;

7.   For costs of suit herein;

8.   For equitable and provisional relief;

9.   For such other and further relief as the Court may deem to be just and proper.


DATED:  March 19, 2025          ELLIS GEORGE LLP
                                Eric M. George
                                Katherine A. Petti
                                Christopher T. Berg


                                By: _____
                                Christopher T. Berg
                                Attorneys for Plaintiffs Fox Cable Network
                                Services, LLC and Tubi, Inc.

2540583

-19-

COMPLAINT

## JURY TRIAL DEMAND

Plaintiffs demand a jury trial on all issues so triable.


DATED:  March 19, 2025            ELLIS GEORGE LLP
                                 Eric M. George
                                 Katherine A. Petti
                                 Christopher T. Berg


                        By:  _____
                                 Christopher T. Berg
                                 Attorneys for Plaintiffs Fox Cable Network
                                 Services, LLC and Tubi, Inc.