# EXHIBIT 4

[CERTIFIED TRANSLATION]

ROGELIO ARTURO ISLAS PEREZ 07/04/25 13:33:51
706a66206a36a6632000000000000000000000000000000147cb

MEDIA DEPORTES MEXICO, S. DE R.L. DE C.V. AND MEXICO SPORTS DISTRIBUTION, LLC.

VS

FUERZA DEPORTIVA DEL CLUB LEON, S.A. DE C.V., TUBI, INC. AND FOX CABLE NETWORK SERVICES, LLC.

TRIAL: ORDINARY COMMERCIAL TRIAL WITH PRECAUTIONARY PROVIDENCE

CONFIDENTIAL

CIVIL JUDGE OF WRITTEN PROCESS FOR MEXICO CITY, ASSIGNED BY ROTATION.

**ROGELIO ARTURO ISLAS PEREZ**, in my capacity as general attorney-in-fact for lawsuits and collections of Media Deportes Mexico, S. de R.L. de C.V., with Federal Taxpayer Registry Code MDM191007M83, simple copy attached as **Exhibit 1)**; capacity that I request be recognized according to the notarial testimony attached as **Exhibit 2),** and which I request be returned to me following comparison and verification thereof; and of Mexico Sports Distribution, LLC, a company incorporated in accordance with the laws of Delaware, United States of America, which I hereby declare under oath does not have a Federal Taxpayer Registry Code; capacity that I request be recognized according to the notarial testimony attached as **Exhibit 3)**, and which I request be returned to me following comparison and verification thereof; indicating as the address for service of process for both companies, even for personal notices, the house marked with number 148 in Alejandro Dumas, Colonia Polanco III Seccion, Alcaldia Miguel Hidalgo, C.P. 11540, in Mexico City. I hereby authorize, under the terms of the third paragraph of article 1069 of the Commercial Code, lawyers Paulo Jenaro Diez Gargari, with professional license number 2357604; Carlos David Villasante Santoyo, with professional license number 2613630; Mireya Martinez Gomez, with professional license number 11082666; Alan Said Lopez Rios, with professional license number 8360468; Rodrigo Bernardo Diez Gargari, with professional license number 7173124; and Rodrigo Jimenez Valencia, with professional license number 4490388; whom we hereby authorize to jointly or separately promote, under the terms mentioned in the legal provision invoked, and in general, to exercise any procedural act in the interest of

MIGUEL ÁNGEL CÁRDENAS CEDEÑO
EXPERT TRANSLATOR
OF THE SUPREME COURT OF JUSTICE
FOR MEXICO CITY • TEL: 559000 1100

1

2

ROGELIO ARTURO ISLAS PEREZ 07/04/25 13:33:51
706a662063a6a66320000000000000000000000000000147cb

my client. Additionally, I hereby provide authorization to hear and receive notifications, access case records, photograph evidence and collect documents and securities, signing as necessary, to Mr. Paulo Diez Terroba, Mr. Santiago Diez Terroba, Mr. Jesus Emmanuel Meraz Gomez, Mr. Kevin Eduardo Basilio Garcia, Mr. Rodolfo Arturo Villa Hernandez, Ms. Paola Abigail Romero Toscano, Ms. Shania Nicole Salvador Diaz, Ms. Fatima Fabiola Ramirez Mendoza, Ms. Mitzi Alejandra Suarez Salazar, Ms. Catheryne Italia Mondragon Contreras Canchola, Mr. Rafael Castro Valles Muñoz, Mr. Jose Alfredo Garcia Gomez, and Mr. Ismael Olan Martinez, indistinctly. Before you today, I hereby respectfully submit the following:

## LAWSUIT

With the capacity that I have accredited, which I request be recognized immediately, representing Media Deportes Mexico, S. de R.L. de C.V. and Mexico Sports Distribution, LLC, based on articles 1378 et seq. of the Commercial Code, I hereby initiate an ordinary commercial lawsuit against:

1.  Fuerza Deportiva del Club Leon, S.A. de C.V., whose address for service of process is located at Crater # 625, Colonia Jardines del Pedregal, Alcaldia Alvaro Obregon, C.P. 01900, in Mexico City;

2.  Tubi, Inc., whose address for service of process is located at 1021 West Pico Blvd., 2121/12, Los Angeles, California 90035, in the United States of America; and

3.  Fox Cable Network Services, LLC, whose address for service of process is located at 1021 West Pico Blvd., 2121/12, Los Angeles, California 90035, in the United States of America; for the payment and enforcement of the following

## CLAIMS

a)  The court resolution that states that Fuerza Deportiva del Club Leon, S.A. de C.V. violated the right of first negotiation agreed upon in Clause 7 of a certain Short Form Program Purchase Agreement dated May 27, 2014, and

MIGUEL ÁNGEL CÁRDENAS CEDEÑO
EXPERT TRANSLATOR   2
OF THE SUPREME COURT OF JUSTICE
FOR MEXICO CITY • TEL: 559000 1100

its amendment agreement dated October 4, 2017, due to the unlawful acts described in the facts of this lawsuit.

b)    Compensation to Media Deportes Mexico, S. de R.L. de C.V. and Mexico Sports Distribution, LLC, for the damages and losses they suffered as a direct and immediate consequence of the unlawful conduct of Fuerza Deportiva del Club Leon, S.A. de C.V., in entering into an agreement with a third party, other than my clients (Fox Cable Network Services, LLC), whose purpose is essentially the same as the Short Form Program Purchase Agreement dated May 27, 2014, and its amendment agreement dated October 4, 2017, without respecting the right of first negotiation agreed upon in Clause 7 of said agreement of wills; loss of assets and lost profits that shall be quantified in judgment execution, in accordance with the provisions of Article 1348 of the Commercial Code.

c)    The judgment ordering Tubi Inc. and Fox Cable Network Services, LLC to respect the right of first negotiation agreed upon in Clause 7 of the Short Form Program Purchase Agreement dated May 27, 2014, and its amendment agreement dated October 4, 2017, entered into by and between Mexico Sports Distribution, LLC, and Fuerza Deportiva del Club Leon, S.A. de C.V.

d)    The invalidity of Clause 3 of the Short Form Program Purchase Agreement dated May 27, 2014, and its amendment agreement dated October 4, 2017, entered into by and between Mexico Sports Distribution, LLC, and Fuerza Deportiva del Club Leon, S.A. de C.V., entitled "Applicable Law; Jurisdiction," for violating the provisions of Article 1093 of the Commercial Code and the case law entitled "*JURISDICTION BY TERRITORY IN COMMERCIAL MATTERS. ITS EXTENSION BY EXPRESS SUBMISSION AGREEMENT IS LIMITED TO THE CASES PROVIDED FOR IN ARTICLE 1093 OF THE COMMERCIAL CODE*", which is invoked in this claim.

e)    Payment of the expenses and costs incurred in the processing of this trial.

MIGUEL ÁNGEL CÁRDENAS CEDEÑO
EXPERT TRANSLATOR
OF THE SUPREME COURT OF JUSTICE
FOR MEXICO CITY • TEL: 559000 1100

Before delving into the factual basis of the claim, it is appropriate for my clients to assert the following:

## PRELIMINARY CONSIDERATIONS

My clients, Media Deportes Mexico, S. de R.L. de C.V. (hereinafter "**MDM**") and Mexico Sports Distribution, LLC (hereinafter "**FSM**") are legal entities and subsidiaries of Grupo Lauman Holding, S. de R.L. de C.V. (hereinafter "**Grupo Lauman Holding**") that operate the business known as *Fox Sports Mexico*.[1]

Fox Sports Mexico's business consists primarily of broadcasting sporting events through restricted (i.e. paid) television channels. Since these events are watched by a large number of people, various advertisers are interested in booking time slots and spaces to broadcast commercial messages on Fox Sports Mexico channels. Fox Sports Mexico's business is primarily comprised of the following types of agreements:

- Licensing agreements for broadcasting sporting events: Fox Sports Mexico pays the rights holders and/or owners of sports broadcasting rights (e.g., soccer teams, the NFL, Formula 1, etc.) in consideration for granting a license to broadcast said sporting events. **FSM entered into an agreement of this kind with the defendant, Fuerza Deportiva del Club Leon, S.A. de C.V.**
- Distribution or affiliation agreements: restricted television and audio service providers (i.e., paid TV providers, which in Mexico include, among others, Sky, Totalplay, and Izzi) pay Fox Sports Mexico a fixed amount for each subscriber to the corresponding service.
- Advertising agreements: Fox Sports Mexico sells time slots and spaces to third parties for broadcasting commercial messages on its channels. **MDM enters into agreements of this kind and did so while my clients' controlling group broadcasted the home soccer games of the men's team of Club de Futbol Leon (hereinafter, "Leon Men's Team").**

---

[1] Throughout this document, the term *"Fox Sports Mexico"* should be understood as a joint reference to FSM and MDM.

MIGUEL ÁNGEL CÁRDENAS CEDEÑO
EXPERT TRANSLATOR
OF THE SUPREME COURT OF JUSTICE
FOR MEXICO CITY • TEL: 559000 1100

4

ROGELIO ARTURO ISLAS PEREZ 07/04/25 13:33:51
70fa66206a6a66a3200000000000000000000000147cb

4

- Talent agreements: agreements entered into by Fox Sports Mexico with commentators and analysts who add value to its programming.

From this point on, it is important to make a conceptual distinction that is essential for a proper understanding of this lawsuit. The Fox Sports Mexico business was originally —before 2019— owned by Twenty-First Century Fox, Inc. (hereinafter "**21CF**"), a company incorporated under the laws of Delaware, United States of America. 21CF was a multinational media corporation controlled by the Murdoch family, which at one time became the fourth-largest media conglomerate in the United States of America.

In 2018, the majority of 21CF's assets were sold to The Walt Disney Company (hereinafter "**Disney**"). The remaining assets, not included in the sale to Disney, remained under the control of a new company, also controlled by the Murdoch family, called Fox Corporation (hereinafter "**Fox Corp.**"). Among the assets originally transferred to Disney were those corresponding to the Fox Sports Mexico business.

In Mexico, the sale of assets between Disney and 21CF was subject to authorization, among others, from the Federal Telecommunications Institute (hereinafter, the "**IFT**", for its initials in Spanish). Prior to its acquisition of 21CF's business, Disney already held a significant share of the sports broadcasting market on paid TV through its business known as ESPN. Therefore, in order to prevent a monopolistic merger, the IFT authorized the purchase of assets from 21CF by Disney, but subject to the condition that the Fox Sports Mexico business be divested from the transaction, meaning that it be sold by Disney to an independent third party.

As a result of this divestiture process, on November 10, 2021, the Grupo Lauman Holding acquired Disney's Fox Sports Mexico business by purchasing the shares of the current plaintiffs: MDM and FSM. Therefore, since November 10, 2021, the Fox Sports Mexico business has been owned by the Grupo Lauman Holding, through the plaintiffs hereof, MDM and FSM.

Thus, the Fox Sports Mexico business has operated uninterruptedly in the country since 1999, under the control of various business groups:

MIGUEL ÁNGEL CÁRDENAS CEDEÑO
EXPERT TRANSLATOR    5
OF THE SUPREME COURT OF JUSTICE
FOR MEXICO CITY • TEL: 559000 1100

ROGELIO ARTURO ISLAS PEREZ 07/04/25 13:33:51
708a662063a6663200000000000000000000000147cb

ROGELIO ARTURO ISLAS PEREZ 07/04/25 13:33:51
70ea66206636a66320000000000000000000000147cb

- Prior to 2019, Fox Sports Mexico's business operated under the control of 21CF, which was controlled by the Murdoch family.

- Between 2019 and 2021, Fox Sports Mexico's business operated under Disney control.

- As of 2021, the Fox Sports Mexico business operates (to date) under the control of the Grupo Lauman Holding.

For the purposes of this lawsuit, it is important to note the distinction between two entities with similar names, but which are completely independent from each other from a corporate perspective:

- On the one hand, **Fox Corp.**, a company incorporated under the laws of the State of Delaware, United States of America, listed on the New York Stock Exchange under the ticker symbol "FOX", and which is currently one of the largest multinational corporations with a share in the media sector;

- On the other hand, **Fox Sports Mexico**, a business owned (indirectly) by the Grupo Lauman Holding, through the plaintiffs hereof, MDM and FSM, holder or licensee of the rights to broadcast various sporting events via paid television in Mexico.

Since the time when Fox Sports Mexico's business was under the control of 21CF (now Fox Corp.), Fox Sports Mexico's programming has included broadcasts of games from several teams in Mexico's first division soccer league (Liga MX), most notably those featuring the Leon Men's Team. Originally, when the business was under the control of 21CF, the broadcasting rights for these teams had been licensed to FSLA Holding, LLC (hereinafter "**FSLA**"), a subsidiary of 21CF. When the business was acquired by the Grupo Lauman Holding, the aforementioned broadcasting rights were transferred to the plaintiff hereof, FSM.

Now, and this is the core issue of this lawsuit: since broadcasting rights licensing agreements are one of the pillars of Fox Sports Mexico's business, in many cases they

MIGUEL ÁNGEL CÁRDENAS CEDEÑO
EXPERT TRANSLATOR
OF THE SUPREME COURT OF JUSTICE
FOR MEXICO CITY • TEL: 559000 1100

6

include clauses that protect it, giving it preference over any other third parties to enter into new agreements once the current ones expire. Generally speaking, these clauses authorize Fox Sports Mexico to match any offer made by a third party to enter into new agreements once the current ones have expired.

As already mentioned in this preliminary consideration, since 2019, Fox Corp. no longer has any share of the sports broadcasting market in Mexico. However, Fox Corp. has recently shown interest in actively participating in said market again. For the purposes of the foregoing, Fox Corp. has begun negotiations with various sports broadcasting rights holders to obtain licenses to broadcast such events nationwide. Although it is not the subject of this lawsuit, from this point on, it is necessary to highlight that, as part of its strategy to re-enter the sports broadcasting market in Mexico, Fox Corp. has unlawfully damaged my clients (both in their financial situation and reputation), with the aim of causing them to lose some of their most valuable assets, which, once lost by my clients, could be acquired by Fox Corp. Fox Corp.'s strategy has been executed, among other things, through a false expression of interest in acquiring the entire Fox Sports Mexico business from my clients, through which Fox Corp. managed to obtain a privileged position of access to information regarding my clients' management. Taking advantage of this privileged position, Fox Corp. deliberately and unlawfully carried out a series of conducts with the purpose of financially, commercially and reputationally harming my clients, and benefiting from said harm (acquiring some or all of the assets lost by my clients as a result of Fox Corp.'s unlawful conduct). From this moment on, my clients expressly reserve their right and action to claim from Fox Corp., and/or any of its subsidiaries, affiliates and/or related parties, compensation for damages caused by the conducts generally referred to in this paragraph, and which are different from those claimed in this lawsuit.

As you will find in the narration of the facts of this lawsuit, Fox Corp. recently — through one of its subsidiaries and/or affiliates— entered into agreements with Leon's controlling group and/or with Leon to broadcast **in Mexican territory** the games (among others) that said team plays as home team. And indeed, as we will demonstrate in this trial, Fox Corp. has begun streaming such games on its Tubi platform—controlled by Fox Corp., through its subsidiary Tubi, Inc., a company incorporated under the laws of the State of Delaware, United States of America (hereinafter "**Tubi**"). The problem with this is that Leon's controlling group signed the agreements with Fox Corp. –through the

MIGUEL ÁNGEL CÁRDENAS CEDEÑO
EXPERT TRANSLATOR
OF THE SUPREME COURT OF JUSTICE
FOR MEXICO CITY • TEL: 559000 1100

ROGELIO ARTURO ISLAS PEREZ 07/04/25 13:33:51
706a66206636a66320000000000000000000000147cb

co-defendant hereof, Fox Cable Networks, LLC (hereinafter "**Fox Cable**")–, in clear violation of the right of first negotiation granted to the co-plaintiff hereof, FSM, whereby the current defendant has caused –and, if not prevented, shall continue to cause– serious damages and losses to my clients, which will be described in this document and which include, but are not limited to, all amounts for advertising that MDM failed to earn and which, instead, were (and continue to be) illegally obtained by a third party other than my clients.

Having stated the above, you shall find below a narration of the facts and legal considerations on which this claim is based:

## FACTS

**1.-**    On May 27, 2014, the defendant hereof, Fuerza Deportiva del Club Leon, S.A. de C.V. (hereinafter "**Leon**") and FSLA —then a subsidiary of 21CF— entered into a Short Form Program Purchase Agreement (hereinafter, simply the "**Leon Agreement**") that was intended to grant FSLA the exclusive right to broadcast worldwide (with the exception of the United States of America) all games in which the Leon Men's Team played as the home team.

Originally, the Leon Agreement would be in effect until the later of the following events occurs: (i) the final match of the Torneo Clausura 2019; and (ii) June 30, 2019.

Under oath, I hereby declare that my clients do not have this document in its original form or a certified copy, as it was never delivered to them by FSLA. Therefore, pursuant to Article 89 of the Federal Code of Civil Procedure, which is applicable by extension, I hereby request Your Honor to require Pachuca to produce the original or a certified copy of this document when responding to the lawsuit, warning them that failure to do so shall result in the assertions my clients make in this lawsuit being deemed true. Without prejudice to the foregoing, a copy of the Leon Agreement is attached hereto, with its respective translation into Spanish by an authorized expert of this Court, as **Exhibit 4)**.

**2.-**    By virtue of the Leon Agreement, the defendant hereto granted, among other things, an exclusive license in favor of FSLA (the latter, in its capacity as licensee,

MIGUEL ÁNGEL CÁRDENAS CEDEÑO
EXPERT TRANSLATOR
OF THE SUPREME COURT OF JUSTICE
FOR MEXICO CITY • TEL: 559000 1100

ROGELIO ARTURO ISLAS PEREZ 07/04/25 13:33:51
70fa66206d6a6663200000000000000000000147cb

referred to in the Leon Agreement as "Fox") to broadcast worldwide, except in the United States of America, all home games played by the Leon Men's Team during the term of the Leon Agreement:

Event(s): The pre-season, friendly, regular season and playoff (Liguilla) home games played by Club de Futbol Leon ("Leon") at any venue in which Leon is designated as the host or "home team," during the Term; or any games whose video/TV rights are controlled by the Owner, including, but not limited to any "home team" or Owner-controlled games from:

    a) Liga MX - Torneos Apertura y Clausura: any and all, but a minimum of 17 games, plus any playoffs (Liguilla) and Final matches played;

    b) Copa MX - any and all matches and/or Finals; and

    c) Friendlies - all games, Copas and/or tournaments (cuadrangulares).

Territory: The Territory shall be the entire world, provided, however, that Fox has no rights to exhibit or use the Events in the United States of America, including Puerto Rico (except for any news access or highlights rights).

Language(s): The Event(s) may be exhibited by Fox in any and all Languages.

3.- As part of the purpose of the Leon Agreement, the licensee —originally FSLA, and now my client, FSM— has the right to advertise, market, promote, broadcast, sublicense, and distribute exclusively the aforementioned Leon games:

Broadcast Basis: Fox shall have the right to advertise, market, promote, exhibit, sub-license and distribute the Events, on a live or delayed basis, in the Languages, throughout the Territory, during the Term, by any and all audio and visual transmission media, technologies or means now known or hereafter developed (including, but not limited to Video On Demand, Pay Per View, 3D, digital media or interactive technologies, including but not limited to mobile, internet, broadband, game consoles, tablets, etc.) whether digital, analog, high definition or modified on the terms and conditions contained in this Agreement.

Exclusivity: The rights granted to Fox herein are exclusive in the Languages throughout the Territory via the Broadcast Basis; provided, however, that:

    1. Fox acknowledges and agrees that Claro Sports or any other America Movil owned sports channel, may exhibit, on a non-exclusive basis, a live simulcast of the full-length Liga MX Events exhibited by Fox, provided that the Liga MX Events may only be exhibited on the DISH pay TV platform via DBS

ROGELIO ARTURO ISLAS PEREZ 07/04/25 13:33:51 706a66206a66632000000000000000000000000147cb

MIGUEL ÁNGEL CÁRDENAS CEDEÑO
EXPERT TRANSLATOR
OF THE SUPREME COURT OF JUSTICE
FOR MEXICO CITY • TEL: 559000 1100

9

(satellite), solely in the Spanish language within Mexico;

2. Owner shall have the right to make the Liga MX Events available, on a non-exclusive basis, via the America Movil internet platforms (e.g., UNOtv or clarosports.com) or any other digital/mobile distribution service owned by America Movil throughout Latin America;

3. Owner shall ensure that the Events licensed by Owner pursuant to Sections 1 and 2 above employ industry-standard geo-blocking technology in such a manner that restricts overspill of the exhibitions of the Events outside of their respective territories and prohibits access of the Events for free (i.e., all digital exhibitions shall remain behind a pay wall); and

4. Owner must ensure that any exhibitions in the USA are not accessible to viewers in the Territory, except for any limited and incidental overspill caused by a terrestrial broadcast signal.

Term/Runs:              Fox's rights herein shall commence on the earlier of July 1, 2014 or the commencement of the Torneo Apertura 2014 and shall expire on the later of June 30, 2019 or the final match of the Torneo Clausura 2019. Fox shall be permitted unlimited runs or exhibitions of the Events during the Term. Notwithstanding the Term, Fox shall have 1 year following the expiration of the Term to use or exhibit the Events which took place during the Term.

**4.-** The parties agreed that the Leon Agreement would be valid from July 1, 2014, until the later of the following dates: June 30, 2019, or the final match of the Torneo Clausura 2019.[2]

This term was extended by virtue of its amendment agreement dated October 4, 2017 (hereinafter the "**Amendment Agreement**"), to extend it at least until June 30, 2024, or the last match of the Torneo Clausura 2024, whichever occurs last.

Under oath, I hereby declare that my clients do not have this document in its original form or a certified copy, as it was never delivered to them by FSLA. Therefore, pursuant to Article 89 of the Federal Code of Civil Procedure, which is applicable by extension, I hereby request Your Honor to require Pachuca to produce the original or a certified copy of this document when responding to the lawsuit, warning them that failure

---

[2] The second match of the Torneo Clausura 201[*sic*] final was played between Leon and Tigres on May 26, 2019. https://es.wikipedia.org/wiki/Torneo_Clausura_2019_(M%C3%A9xico)

MIGUEL ÁNGEL CÁRDENAS CEDEÑO
EXPERT TRANSLATOR
OF THE SUPREME COURT OF JUSTICE
FOR MEXICO CITY • TEL: 559000 1100

10

ROGELIO ARTURO ISLAS PEREZ 07/04/25 13:33:51
706a66206a6a66320000000000000000000147cb

to do so shall result in the assertions my clients make in this lawsuit being deemed true. Without prejudice to the foregoing, a copy of the Amendment Agreement is attached hereto, with its respective translation into Spanish by an authorized expert of this Court, as **Exhibit 5)**.

5.-    As consideration for the exclusive broadcasting rights under the Leon Agreement, Leon was entitled to receive the amounts listed below, under the schedule provided in the Leon Agreement itself:

| Total License Fee: | Subject to the terms herein, Fox shall pay Owner the amounts detailed below (collectively, the "License Fee") as follows: |
|---|---|

Season 2014/15 (Apertura/Clausura): a total of EIGHT MILLION U.S. DOLLARS (US$8,000,000.00).
Additionally, Fox agrees to pay Owner the following amounts for each of the Liguilla (playoff) rounds in which Leon participates:
Cuartos de Final: USD $700,000.00
Semifinales: USD $650,000.00
Final: USD $650,000.00

Season 2015/16 (Apertura/Clausura): a total of EIGHT MILLION TWO HUNDRED FIFTY THOUSAND U.S. DOLLARS (US8,250,000.00).
Additionally, Fox agrees to pay Owner the following amounts for each of the Liguilla (playoff) rounds in which Leon participates:
Cuartos de Final: USD $700,000.00
Semifinales: USD $650,000.00
Final: USD $650,000.00

Season 2016/17 (Apertura/Clausura): a total of EIGHT MILLION FIVE HUNDRED THOUSAND U.S. DOLLARS (US$8,500,000.00).
Additionally, Fox agrees to pay Owner the following amounts for each of the Liguilla (playoff) rounds in which Leon participates:
Cuartos de Final: USD $700,000.00
Semifinales: USD $650,000.00
Final: USD $650,000.00

Season 2017/18 (Apertura/Clausura): a total of EIGHT MILLION SEVEN HUNDRED FIFTY THOUSAND U.S. DOLLARS (US$8,750,000.00).

Additionally, Fox agrees to pay Owner the following amounts for each of the Liguilla (playoff) rounds in which Leon participates:
Cuartos de Final: USD $700,000.00
Semifinales: USD $650,000.00
Final: USD $650,000.00

Season 2018/19 (Apertura/Clausura): a total of NINE MILLION U.S. DOLLARS (US$9,000,000.00).


MIGUEL ÁNGEL CÁRDENAS CEDEÑO
EXPERT TRANSLATOR
OF THE SUPREME COURT OF JUSTICE
FOR MEXICO CITY • TEL: 559000 1100

ROGELIO ARTURO ISLAS PEREZ 07/04/25 13:33:51
70ba66206c6a66a3200000000000000000000000000147cb

ROGELIO ARTURO ISLAS PEREZ 07/04/25 13:33:51 706a662063a6663200000000000000000000147cb

Additionally, Fox agrees to pay Owner the following amounts for each of the Liguilla (playoff) rounds in which Leon participates:
Cuartos de Final: USD $700,000.00
Semifinales: USD $650,000.00
Final: USD $650,000.00

For the avoidance of doubt, any fees paid by Fox shall be made minus any and all applicable taxes, including for the avoidance of doubt, any IVA or VAT, according to the Payment Schedule detailed below.

Payment Schedule:

Fox shall pay Owner the Total License Fee as follows:
a)  50% of the applicable annual License Fee on June 15 of each year during the Term, provided that the first payment of the Term shall be made within 30 days of signature hereto;
b)  50% of the applicable annual License Fee on January 15 of each year during the Term; and
c)  if Leon should participate in the Liguilla, 100% for each relevant round within 30 days from each respective round.

Notwithstanding the foregoing, any and all payments due hereunder shall be paid on the later of: (i) the above dates; (ii) both parties' signature to this Agreement; and (iii) within 60 days following Fox's receipt of an original invoice from Owner.

6.-    Clause 7 of the Leon Agreement established a "right of first negotiation" in favor of the licensee, which, at the time the Leon Agreement was signed, was FSLA, and is now my client, FSM.

In accordance with the provisions of the aforementioned agreement, during the sixty (60) days prior to its termination, Leon and the licensee had to negotiate in good faith an extension of the term of the agreement, for the broadcasting of the following seasons. In the event that Leon and the licensee could not reach an agreement within the period of sixty (60) days, Leon could freely negotiate with any third party the execution of a new agreement that would have the purpose of broadcasting the games that the Leon Men's Team played as home team:

7.-    In that same clause, the parties agreed to a right of first negotiation in favor of the licensee. Pursuant to the Leon Agreement, the licensee would have the right to match any offer made by any third party, within the ten (10) days following the date on which the licensee received from Leon a copy of the offer made by the corresponding third party.

MIGUEL ÁNGEL CÁRDENAS CEDEÑO
EXPERT TRANSLATOR
OF THE SUPREME COURT OF JUSTICE
FOR MEXICO CITY • TEL: 559000 1100

**8.-**    As a consequence, and in terms of what was agreed and accepted by the parties in Clause 7 of the Leon Agreement, Leon **could not** accept any offer made by a third party (i.e., Leon was **prohibited** from entering into a new agreement with a third party whose purpose was the broadcasting of the games that Leon Men's Team played as a home team), without first having allowed the licensee —today FSM— to exercise its right of first negotiation.

**9.-**    On October 31, 2021, FSLA —whose name had by then changed to TFCF Holding LLC— assigned the Leon Agreement to my principal, FSM.

The foregoing is evidenced by a copy of the respective assignment agreement with electronic signatures, attached hereto as **Exhibit 6)**, and its corresponding translation into Spanish. In this regard, in Clause 8 of this assignment, the parties stipulated that "*This Agreement may be executed and signatures exchanged by electronic means and in any number of counterparts, each of which shall constitute an original...*"

**10.-**    On November 10, 2021, the shares representing the entire capital stock of FSM were acquired by various subsidiaries of the Grupo Lauman Holding. The assignment and change of control referred to above were notified by FSM to Leon on November 30, 2021, as can be seen in the letter of that same date and its respective translation, delivered to Leon via email and attached hereto as **Exhibit 7)**.

As a result, from that date on, FSM became the licensee of the Leon Agreement, and all references to FSLA therein were to be understood as references to FSM.

**11.-**    In addition to the fact that Leon was duly notified of the assignment referred to in the above paragraph, said assignment was consented to by the former, since, at least as of January 2022, it issued the corresponding invoices in the name of FSM, not FSLA, and therefore, Leon received the amounts stated therein from FSM, not FSLA.

The foregoing is evidenced by certain invoices issued by Leon to FSM during 2021, 2022, 2023, and 2024, in connection with the consideration for the exclusive broadcasting rights under the Leon Agreement, described below. These invoices,

MIGUEL ÁNGEL CÁRDENAS CEDEÑO
EXPERT TRANSLATOR 13
OF THE SUPREME COURT OF JUSTICE
FOR MEXICO CITY • TEL: 559000 1100

ROGELIO ARTURO ISLAS PEREZ 07/04/25 13:33:51 706a662063a66320000000000000000000000000147cb

printed and stored in [*sic*] and PDF format on USB[3] storage media, are jointly attached hereto as **Exhibit 8)** and constitute full proof of the legal and commercial relationship between the parties, pursuant to Articles 29 and 29-A of the Federal Tax Code and Article 210-A of the Federal Code of Civil Procedure, which are applicable by extension.[4]

**12.-** As previously seen, in accordance with the terms agreed by the parties in the Leon Agreement, in order for Leon to grant any third party other than FSM the rights to broadcast Leon Men's Team home games after the expiration of the Leon Men's Team Agreement, the following essential requirements would have to be met:

a) At least sixty (60) days prior to the end of the term, Leon and FSM should have initiated a negotiation in good faith to extend the term of the Leon Men's Team Agreement;

b) In the event of not reaching an agreement during the sixty (60) days provided for in the agreement itself, Leon would have had the obligation to notify FSM of any offer signed by a third party to acquire the license to broadcast the games that the Leon Men's Team played as a local team in Liga MX seasons subsequent to those during which the Leon Agreement was in force, so that FSM could exercise its right of first negotiation within ten (10) days after receiving the respective notification.

Any new agreement entered into by Leon without having previously complied with the above requirements would violate FSM's rights under the Leon Agreement and would cause significant damages to FSM. Additionally, this would cause significant damages to MDM, which would be unable to market Leon Men's Team matches through advertising fees.

---

[3] Universal Series Bus.

[4] "INVOICES. INFORMATION GENERATED OR COMMUNICATED AND RECORDED ON ELECTRONIC, OPTICAL, OR ANY OTHER MEANS OR TECHNOLOGY, OBTAINED THROUGH THE QR CODE CONTAINED IN THEM, IS RECOGNIZED AS FULL EVIDENCE." Digital record: 2024497. Instance: Circuit Collegiate Courts. Eleventh Period. Matter(s): Civil. Thesis: I.3o.C.467 C (10a.) Source: Gazette of the Judicial Weekly of the Federation. Book 12, April 2022, Volume IV, page 2726. Type: Isolated

MIGUEL ÁNGEL CÁRDENAS CEDEÑO
EXPERT TRANSLATOR 14
OF THE SUPREME COURT OF JUSTICE
FOR MEXICO CITY • TEL: 559000 1100

**13.-**   The last game of the Torneo Clausura 2024 was played on May 26, 2024, between Club America and Club de Futbol Cruz Azul[5]. Therefore, in accordance with the provisions of the Leon Agreement, its term would end on the later of the following: (i) the final match of the Torneo Clausura 2024; and (ii) June 30, 2024. Since June 30, 2024 is the later date, this is the date on which the Leon Agreement expired.

**14.-**   While serving as licensee of the Leon Agreement —that is, at least from 2022 to 2024— Leon issued at least the following invoices to FSM:

| DATE OF ISSUE | AMOUNT (DOLLARS) |
|---|---|
| 12-06-2021 | $700,000.00 |
| 12-06-2021 | $650,000.00 |
| 12-06-2021 | $650,000.00 |
| 01-03-2022 | $4,875,000.00 |
| 06-01-2022 | $5,000,000.00 |
| 02-16-2023 | $1,000,000.00 |
| 05-12-2023 | $800,000.00 |
| 06-07-2023 | $500,000.00 |
| 06-07-2023 | $400,000.00 |
| 06-30-2023 | $800,000.00 |
| 07-05-2023 | $800,000.00 |
| 07-20-2023 | $250,000.00 |
| 08-04-2023 | $700,000.00 |
| 10-23-2023 | $300,000.00 |
| 11-06-2023 | $250,000.00 |
| 11-30-2023 | $2,500,000.00 |
| 12-29-2023 | $1,075.000.00 |
| 01-18-2024 | $500,000.00 |
| 01-22-2024 | $500,000.00 |
| 01-22-2024 | $700,000.00 |
| 01-22-2024 | $550,000.00 |
| 04-15-2024 | $100,000.00 |
| 05-17-2024 | $250,000.00 |

---

[5] https://es.wikipedia.org/wiki/Torneo_Clausura_2024_(M%C3%A9xico)

MIGUEL ÁNGEL CÁRDENAS CEDEÑO
EXPERT TRANSLATOR
OF THE SUPREME COURT OF JUSTICE
FOR MEXICO CITY • TEL: 559000 1100

ROGELIO ARTURO ISLAS PEREZ 07/04/25 13:33:51 706a66206636a66320000000000000000000000147cb

| 06-20-2024 | $1,000,000.00 |
| 07-01-2024 | $1,000,000.00 |
| 07-22-2024 | $2,000,000.00 |

| DATE OF ISSUE | AMOUNT (MEXICAN PESOS) |
| --- | --- |
| 01-03-2022 | $4,349,121.88 |
| 07-12-2022 | $5,095,425.00 |

And FSM paid Leon to its account in Pesos at Banco Mercantil del Norte, S.A., at least the following amounts:

| Date of issue | Bank account | Amount (US dollars) |
| --- | --- | --- |
| 01-18-2024 | 072225008114275620 | $500,000.00 |
| 01-22-2024 | 072225008114275620 | $1,750,000.00 |
| 04-15-2024 | 072225008114275620 | $100,000.00 |
| 05-17-2024 | 072225008114275620 | $250,000.00 |
| 06-20-2024 | 072225008114275620 | $1,000,000.00 |
| 07-01-2024 | 072225008114275620 | $1,000,000.00 |
| 07-22-2024 | 072225008114275620 | $2,000,000.00 |

This is evidenced by a USB storage device containing these invoices in PDF format, as well as printouts, **Exhibit 8)**; plus printouts of the receipts for the payments to Leon, which are attached hereto as **Exhibit 9)**.

15.- Likewise, while serving as licensee of the Leon Agreement, FSM broadcasted at least the following Leon Men's Team games on Fox Sports Mexico:

| Game | Date |
| --- | --- |
| Leon vs Atlas | 09/12/2021 |
| Leon vs Tijuana | 02/10/2022 |
| Leon vs Queretaro | 18/09/2022 |
| Leon vs Juarez | 06/09/2022 |
| Leon vs Atlas | 28/08/2022 |
| Leon vs Mazatlan | 13/08/2022 |

MIGUEL ÁNGEL CÁRDENAS CEDEÑO
EXPERT TRANSLATOR   16
OF THE SUPREME COURT OF JUSTICE
FOR MEXICO CITY • TEL: 559000 1100

ROGELIO ARTURO ISLAS PEREZ 07/04/25 13:33:51
706a6620636a66320000000000000000000000000147cb

| | |
|---|---|
| Leon vs America | 31/07/2022 |
| Leon vs Toluca | 26/07/2022 |
| Leon vs Pumas | 09/07/2022 |
| Leon vs Toluca | 01/05/2022 |
| Leon vs Tigres | 12/03/2022 |
| Leon vs Necaxa | 16/01/2023 |
| Leon vs Pachuca | 04/02/2023 |
| Leon vs Puebla | 14/02/2023 |
| Leon vs Monterrey | 27/02/2023 |
| Leon vs San Luis | 04/03/2023 |
| Leon vs Santos | 19/03/2023 |
| Leon vs Cruz Azul | 08/04/2023 |
| Leon vs Guadalajara | 15/04/2023 |
| Leon vs Tigres | 30/04/2023 |
| Leon vs Tigres | 03/05/2023 |
| Leon vs San Luis | 07/05/2023 |
| Leon vs Guadalajara | 03/07/2023 |
| Leon vs Pachuca | 10/07/2023 |
| Leon vs Mazatlan | 18/08/2023 |
| Leon vs Necaxa | 02/09/2023 |
| Leon vs Tijuana | 23/09/2023 |
| Leon vs Toluca | 21/10/2023 |
| Leon vs Atlas | 24/10/2023 |
| Leon vs Pumas | 31/10/2023 |
| Leon vs Juarez | 12/11/2023 |
| Leon vs Santos | 26/11/2023 |
| Leon vs America | 29/11/2023 |
| Leon vs Tigres | 17/01/2024 |
| Leon vs Santos | 27/01/2024 |
| Leon vs America | 10/02/2024 |
| Leon vs Cruz Azul | 21/02/2024 |
| Leon vs San Luis | 24/02/2024 |
| Leon vs Puebla | 16/03/2024 |
| Leon vs Queretaro | 06/04/2024 |

MIGUEL ÁNGEL CÁRDENAS CEDEÑO
EXPERT TRANSLATOR
OF THE SUPREME COURT OF JUSTICE
FOR MEXICO CITY • TEL: 559000 1100

| Leon vs Monterrey | 20/04/2024 |
|---|---|

The above is evidenced by public instrument number 139,540 dated February 11, 2025, granted before Mr. Alfonso Zermeño Infante, Notary Public Number 5 for Mexico City; which is attached hereto as **Exhibit 10)**.

16.-   Within the Fox Sports Mexico business, the company that regularly obtains licenses to broadcast sporting events is FSM, while the company that regularly handles the marketing of advertising space on Fox Sports Mexico channels is MDM. In this sense, the company that earns revenue from broadcasting advertisements during sporting events for which FSM has broadcasting rights is MDM. In many cases, MDM obtains such revenue by placing advertisements at its discretion, commissioned by a third party (for example, TV Azteca, with whom advertising agencies contract directly). The price that third parties are willing to pay is a direct function of the sporting events broadcasted. For example, during 2023 —a year in which the Leon Agreement remained in effect and FSM was the licensee of the Leon Men's Team broadcasting rights—, MDM obtained revenue derived from the sale of advertising space on Fox Sports Mexico channels to TV Azteca for approximately the following amounts:

| Date of issue | Amount (Mexican Pesos) |
|---|---|
| 02-16-2023 | $6,464,071.78 |
| 02-27-2023 | $34,800,000.00 |
| 02-27-2023 | $34,800,000.00 |
| 02-28-2023 | $11,600,000.00 |
| 06-22-2023 | $16,735,928.22 |
| 07-05-2023 | $17,400,000.00 |
| 08-01-2023 | $17,400,000.00 |
| 09-19-2023 | $49,386,278.46 |
| 09-26-2023 | $8,228,329.56 |
| 10-06-2023 | $23,369,964.36 |
| 10-25-2023 | $13,521,633.96 |
| 10-25-2023 | $2,900,000.00 |
| 12-07-2023 | $11,600,000.00 |
| 12-08-2023 | $39,386,165.40 |
| 12-13-2023 | $38,280,000.00 |
| 12-18-2023 | $38,580,412.31 |

The above is evidenced by the receipts issued by MDM in favor of TV Azteca, S.A.B. de C.V. and another, which are attached hereto in PDF format as **Exhibit 11)**.

MIGUEL ÁNGEL CÁRDENAS CEDEÑO
EXPERT TRANSLATOR 18
OF THE SUPREME COURT OF JUSTICE
FOR MEXICO CITY • TEL: 559000 1100

**17.-** The fact is that, in terms of the provisions of the Leon Agreement, a good faith negotiation between Leon and FSM should have begun at least by April 30, 2024, to extend the term of the Leon Agreement.

However, said negotiation did not take place.

**18.-** Indeed, to FSM's surprise, on December 18, 2024, the co-defendant hereof, Tubi, an affiliate or subsidiary of Fox Corp., which is located on the website www.tubitv.com, published a statement stating that "Tubi will broadcast the Torneo Clausura 2025 of the Liga MX (men's) and the Liga MX Femenil (women's), Home Games of **Club Leon** and Club Pachuca..."[6]

The foregoing, without any negotiation having taken place with FSM, without Leon having notified FSM of the offer submitted by a third party so that FSM —exercising its right— could match it, and without any act having been carried out to comply with Clause 7 of the Leon Agreement, despite it being binding and obligatory for the defendant.

This is evidenced by a printout of Tubi's statement with its respective translation into Spanish, which is attached hereto as **Exhibit 12)**.

**19.-** In fact, Tubi has already broadcasted the Leon Men's Team games against Futbol Club Juarez, Club Deportivo Guadalajara and Deportivo Toluca.

The broadcast of these games could be seen in Mexico, the main area of application of the Leon Agreement, and which merits an intervention by Your Honor, pursuant to the provisions of Clause 3 of the Leon Agreement, as explained in the "Law" chapter of this lawsuit.

Including the broadcast of the last game mentioned, is evidenced by the record of facts that is attached hereto as **Exhibit 13)**.

---

[6] https://corporate.tubitv.com/press/tubi-to-broadcast-live-liga-mx-and-liga-mx-femenil-gamesfor-free-in-mexico-and-central-america/

MIGUEL ÁNGEL CÁRDENAS CEDEÑO
EXPERT TRANSLATOR
OF THE SUPREME COURT OF JUSTICE
FOR MEXICO CITY • TEL: 559000 1100

**20.-** My clients are fully aware that there is an agreement between Fox Cable (a subsidiary or affiliate of Fox Corp.) and Leon, for the broadcasting of Leon Men's Team games, and under which, Fox Corp. (directly and/or through any of its subsidiaries and/or affiliates) markets Leon Men's Team games and Tubi broadcasts them online. This agreement was entered into in violation of the right of first negotiation expressly established in favor of FSM in the Leon Agreement and in the Amendment Agreement, since Leon: (i) never notified FSM of the offer made by Fox Cable (or any other subsidiary, affiliate or related party of Fox Corp); and (ii) as a result of the omission described in section (i) above, prevented FSM from being able to match the offer made by the corresponding third party.

Under oath, I hereby declare that my clients do not have said agreement of wills in its original form or a certified copy, as it is not available to them nor are they party to it. Therefore, from this moment on, pursuant to Article 89 of the Federal Code of Civil Procedure, which is applicable by extension, I hereby request Your Honor to require Leon to produce the agreement it entered into with Tubi and/or Fox Cable, and by virtue of which it allows either of the latter two to broadcast Leon Men's Team games after the Torneo Clausura 2024 of the Liga MX, especially the Clausura 2025 and/or any other Leon Men's Team games in any other national or international tournament, playing as the home team; with the warning that failure to do so shall result in the assertions made by my clients in this lawsuit being deemed true.

**21.-** Leon's failure to comply with its obligations arising from the Leon Agreement and its Amendment Agreement, —obligations corresponding to the right of first negotiation expressly agreed upon in said Leon Agreement in favor of FSM, in its capacity as licensee—, consisting of the execution of the agreement with Fox Cable, without having given FSM the opportunity to exercise the right of first negotiation expressly agreed upon in the Leon Agreement —for which, among other things, it would have had to notify my client of any offer made by Fox Cable or any third party, and granted my client a period of at least ten (10) days to match said offer (which, as proven in this lawsuit, did not occur)— have caused MDM damages, consisting of all the amounts that Tubi and/or Fox Cable have received for advertising and/or sale of advertising space; and that, in any case, FSM could have received as the exclusive marketer of the home games of Leon Men's Team, if the aforementioned right of first negotiation had been respected, according to which FSM could match the offer made

ROGELIO ARTURO ISLAS PEREZ 07/04/25 13:33:51
706a6620636a66a63200000000000000000000000000147cb

MIGUEL ÁNGEL CÁRDENAS CEDEÑO
EXPERT TRANSLATOR
OF THE SUPREME COURT OF JUSTICE
FOR MEXICO CITY · TEL: 559000 1100

by Fox Corp., through any of its subsidiaries and/or affiliates (including, without limitation, Fox Cable and Tubi) to obtain such exclusive broadcasting rights.

Under oath, I declare that my clients do not have this information, nor is it available to them, because they have no relationship with Fox Cable and/or Tubi that would allow them to do so. Therefore, based on Article 89 of the Federal Code of Civil Procedure, which is applicable by extension, I request Your Honor to require Fox Cable to, within a peremptory period, produce the documents that evidence the amounts it obtained from advertising for the broadcasting of the Leon Men's Team games against Futbol Club Juarez, Club Deportivo Guadalajara and Deportivo Toluca; in addition to any amounts obtained, if applicable, for subsequent Leon Men's Team games broadcasted by Tubi, Fox Cable, and/or any third party designated or authorized by Fox Cable; with the warning that failure to do so shall result in the assertions made by my clients in this lawsuit being considered true.

**22.-** On January 5, 2025 (more than six months after the expiration of the Leon Agreement and the violation of FSM's right of first negotiation), Leon provided notification to FSM through a notary public, seeking to demand payment of alleged amounts that it claims FSM owes it. At the same time, it expressly acknowledged the existence of the right of first negotiation contained in the Leon Agreement, stating the following when referring to Clause 7 of said agreement: "*[…] giving Fox[7] the opportunity to match any proposal made by any other interested party to Club Leon, with Fox having a period of 10 days to do so, from the date on which written notification of the terms of the proposal made by any other interested party is received[…].*" While the existence of the right of first negotiation held by FSM is evident from a simple reading of the Leon Agreement, it is particularly striking that Club Leon itself expressly recognizes its existence (despite knowing that with its conduct, described throughout this lawsuit, it has openly violated said right to the detriment of my clients).

I attach hereto as **Exhibit 14)**, the original of the notification from Leon together with the instructions given to FSM by the notary public.

**23.-** Regarding jurisdiction by express submission in commercial matters, Article 1093 of the Commercial Code provides the following:

---

[7] In the notification, the term "Fox" refers to FSM.

MIGUEL ÁNGEL CÁRDENAS CEDEÑO
EXPERT TRANSLATOR
OF THE SUPREME COURT OF JUSTICE
FOR MEXICO CITY • TEL: 559000 1100

ROGELIO ARTURO ISLAS PEREZ 07/04/25 13:33:51 706a62063a663200000000000000000000000147cb

"Article 1093.- There is express submission when the interested parties clearly and definitively waive any jurisdiction granted to them by law, and in the event of a dispute, they designate as competent courts **those of the domicile of either party, the place of fulfillment of any of the obligations contracted, or the location of the subject**. In the event that multiple jurisdictions are agreed upon, the plaintiff may choose a competent court from among them."

According to this section, in commercial matters, territorial jurisdiction is extendable, since the parties to a legal act may submit, in the event of a dispute, to the courts of a specific place, through a submission agreement, in which the interested parties expressly state their will for the courts of a specific place to be competent to hear a future or current dispute.

However, for this express submission to be constituted, the parties must be willing to waive the jurisdictions granted to them by law and the designation of competent courts must be made, **but with the condition that they are only those of the domicile of one of the parties, those of the place of fulfillment of any of the obligations contracted, or those of the location of the subject.**

The foregoing, because, although the will of the parties is the supreme law of agreements, this generic rule in commercial matters is not applicable to the submission agreement, by virtue of the fact that the latter is governed by the special rule contained in Article 1093, in relation to Article 1092 of the same ordinance, which limits the constitution of said agreement to the cases expressly contained in the first of these precepts, which are limiting and not illustrative, since by their literal meaning and in accordance with a teleological interpretation, their purpose was to guarantee, to the extent possible, that in commercial matters the jurisdictional activity that corresponds to the State through the courts and through commercial trials, is carried out achieving expeditious, impartial and complete justice, and this reform complements the various constitutional and legal ones approved to achieve a new judicial system that ensures for all Mexicans the full enjoyment of their right of access to jurisdiction.

The above is supported by the following case law:

MIGUEL ÁNGEL CÁRDENAS CEDEÑO
EXPERT TRANSLATOR
OF THE SUPREME COURT OF JUSTICE
FOR MEXICO CITY • TEL: 559000 1100

ROGELIO ARTURO ISLAS PEREZ 07/04/25 13:33:51
706a662063a6632000000000000000000000000147cb

"JURISDICTION BY TERRITORY IN COMMERCIAL MATTERS. ITS EXTENSION BY EXPRESS SUBMISSION AGREEMENT IS LIMITED TO THE CASES PROVIDED FOR IN ARTICLE 1093 OF THE COMMERCIAL CODE. Facts: The amparo petitioner objected to the decision of the Court in charge, which declared that jurisdiction belonged to the courts of the then Federal District (now Mexico City), having waived any jurisdiction that might apply to them by virtue of their domicile. The petitioner argued that this reasoning is illegal, because the aforementioned courts cannot be designated as competent, since they are not those of the domicile of either party, those of the place of fulfillment of any of the obligations, or those of the location of the subject.

Legal criteria: This Circuit Collegiate Court determines that the extension of jurisdiction by territory in commercial matters by express submission agreement **is limited to the cases provided for in Article 1093 of the Commercial Code**.

Rationale: The foregoing is because, in accordance with Articles 1092 and 1093 of the Commercial Code, in commercial matters, territorial jurisdiction is extendable, since the parties to a legal act may submit, in the event of a dispute, to the courts of a specific place, through a submission agreement, in which the interested parties expressly state their will for the courts of a specific place to be competent to hear a future or current dispute. However, for this express submission to be constituted, the parties must be willing to waive the jurisdictions granted to them by law and the designation of competent courts must be made, but with the condition that they are only those of the domicile of one of the parties, those of the place of fulfillment of any of the obligations contracted, or those of the location of the subject. According to this provision, this express submission agreement, in which the parties extend jurisdiction by territory, unlike the provisions of the aforementioned Article 1093, before its reform dated January 4, 1989, which allowed express submission to any court, is limited when this reform implies an impediment or denial of access to justice, which may occur if the parties submit to the jurisdiction of a place where none of them has their domicile, nor has the fulfillment of any of the obligations contracted been agreed upon therein, nor is it the location of the subject, since the need to move to litigate to a place other than one of those specified above shall be more onerous and may constitute an impediment or denial of access to justice for any of the parties, because, although according to Article 78 of the aforementioned code, the will of the parties is the supreme law of agreements, **this generic rule in commercial matters is not applicable to the submission agreement, by virtue of the fact that the latter is governed by the special rule contained in Article 1093, in relation to Article 1092 that is referred to, which limits the constitution of said agreement to the cases expressly contained in the first of these precepts, which are limiting and not illustrative, since by their literal meaning and in accordance with a teleological interpretation, they are faithful to the spirit of the initiative of the Executive that produced the reform contained in the decree published in the Official Gazette of the Federation on January 4, 1989, the**

MIGUEL ÁNGEL CÁRDENAS CEDEÑO
EXPERT TRANSLATOR   23
OF THE SUPREME COURT OF JUSTICE
FOR MEXICO CITY · TEL.: 559000 1100

purpose of which was to guarantee, to the extent possible, that in commercial matters the jurisdictional activity that corresponds to the State through the courts and through commercial trials, is carried out achieving expeditious, impartial and complete justice, and this reform complements the various constitutional and legal ones approved to achieve a new judicial system that ensures for all Mexicans the full enjoyment of their right of access to jurisdiction."[8]

In this specific case, in Clause 3 of the Leon Agreement, FSLA and Leon agreed to the following:

"3. Governing Law; Jurisdiction: This Agreement and all matters collateral hereto shall be governed by California law applicable to contracts made and fully performed therein, without giving effect to principles of conflict of laws. Any legal proceeding relating to this Agreement shall be instituted and prosecuted solely in, **and each party hereby irrevocably submits to the exclusive jurisdiction of all state and federal courts located in the County of Los Angeles, State of California, U.S.A. unless such an action or proceeding is required to be brought in another court to obtain subject matter jurisdiction over the matter in controversy.**"

However, the facts are that:

(i)     Leon's domicile is in Mexico City, Mexico;

(ii)    FSM's domicile, as the holder of the exclusive license rights in the Leon Agreement, is also not in Los Angeles County, California, as shown in the invoices printed and stored in **Exhibit 8)**; it is located at Almeria Ave. No. 357 Suite 101, ZC: 33134, Coral Gables, Florida, United States of America;

(iii)   No fulfillment of any obligation contained in the Leon Agreement takes place in Los Angeles County, California, but rather in Mexican territory, as evidenced by the invoices and receipts for the payments made by FSM to Leon's bank account at Banco

---

[8] Digital record: 2026619. Court: Circuit Collegiate Courts. Eleventh Period. Matter(s): Civil. Thesis: I.3o.C. J/6 C (11a.). Source: Gazette of the Judicial Weekly of the Federation. Book 26, June 2023, Volume VII, page 6384. Type: Case Law

MIGUEL ÁNGEL CÁRDENAS CEDEÑO
EXPERT TRANSLATOR    24
OF THE SUPREME COURT OF JUSTICE
FOR MEXICO CITY • TEL: 559000 1100

Mercantil del Norte, S.A., in Mexico, and which are attached hereto; and

(iv)     The location of the subject is not in Los Angeles County, California either, since the subject matter of the Leon Agreement is the broadcasting rights license for Leon Men's Team **home games**, specifically in Mexico.

(v)      In the Leon Agreement, the parties did not clearly and expressly waive the jurisdiction granted to them by law, as required by Article 1093 of the Commercial Code; and

(vi)     The Leon Agreement was not entered into in the State of California, United States of America, nor was it (nor should it have been) fulfilled in said State.

Consequently, this clause is void pursuant to Articles 1092 and 1093 of the Commercial Code and the aforementioned case law; with Your Honor's competence being provided for in Article 1104 of the same code.

**24.-**   Consequently, my clients find themselves under an urgent need to file this lawsuit, in the manner and form proposed.

**LAW**

The following articles apply in substance: 78, 81, 1092, and 1093 of the Commercial Code; 1796, 1949, 2062, 2104, 2110, and other related and applicable articles of the Federal Civil Code.

The procedure is governed by Articles 1378, 1379 and other related articles of the Commercial Code in force; and 24, Section I, of the Federal Code of Civil Procedure, which is applicable by extension.

This lawsuit is for an **undetermined amount**, because it claims the civil liability incurred by Leon for breaching the Leon Agreement, and payment of the damages

MIGUEL ÁNGEL CÁRDENAS CEDEÑO
EXPERT TRANSLATOR
OF THE SUPREME COURT OF JUSTICE
FOR MEXICO CITY • TEL: 559000 1100
25

claimed warrants more than a simple arithmetic operation. Therefore, we reiterate that the proposed ordinary commercial route is admissible, in accordance with the criteria issued by the Federal Judicial Branch in this regard.[9]

This Honorable Court is competent to hear this matter pursuant to Article 1090 of the Commercial Code, given the nullity of Clause 3 of the Leon Agreement, pursuant to which the parties initially submitted to the courts of Los Angeles County, California, in the United States of America; without the domicile of FSM or Leon, the fulfillment of obligations, or the subject being located in said place. In addition to the fact that, in said stipulation, the parties also added that said jurisdiction could be extended when the action or procedure exercised by one of the parties **had to be instituted in another court to obtain jurisdiction based on the subject of the matter in dispute**. And in this case, Leon's unlawful act consisted of allowing Tubi and/or Fox Cable to broadcast and market Leon Men's Team home games in Mexican territory, which entitles my clients to initiate this action before Your Honor, claiming payment for damages incurred in Mexican territory; in addition to the fact that Leon's domicile is located in Mexico City.

## PRECAUTIONARY MEASURES

Based on Articles 1, 5 and 17 of the Political Constitution of the United Mexican States, Article 10 of the Universal Declaration of Human Rights, Article 14.1 of the International Covenant on Civil and Political Rights, Articles 8.1 and 25 of the American Convention on Human Rights, Articles 1168, Section II, 1175, 1176 of the Commercial Code, and Articles 384 and 388 of the Federal Code of Civil Procedure, which is applicable by extension of the Commercial Code, in accordance with case law thesis 1a./J. 27/2013(10a.), and in order for the final judgment issued in this trial to not be a legal act devoid of consequences, which impedes my clients' right to an effective judicial remedy,

---

[9] To this end, the following final judgment is applicable *a contrario sensu*: "COMMERCIAL ORAL TRIAL IT IS INADMISSIBLE WHEN DEMANDING THE TERMINATION OF A PURCHASE AGREEMENT FOR AN UNDETERMINED AMOUNT, SINCE THE AMOUNT OF THE TRANSACTION IS NOT SPECIFIED AND IT IS NOT POSSIBLE FOR THE JUDGE TO OBTAIN IT WITH A SIMPLE ARITHMETIC OPERATION." Digital record: 2028786. Court: Circuit Collegiate Courts. Eleventh Period. Matter(s): Civil. Thesis: XXII.3o.A.C.10 C (10a.). Source: Judicial Weekly of the Federation. Type: Isolated. As well as the case law theses 1a./J. 4/2002 and 1a./J. 30/2008: "APPEAL IN COMMERCIAL MATTERS. THE AMOUNT OF THE BUSINESS FOR THE PURPOSES OF ITS ADMISSIBILITY, MUST INCLUDE BOTH THE PRINCIPAL AMOUNT, AS WELL AS THE AMOUNTS FOR INTERESTS, EXPENSES, COSTS AND OTHER BENEFITS THAT ARE EASILY PAYABLE, THROUGH A SIMPLE ARITHMETIC OPERATION." and "APPEAL IN COMMERCIAL MATTERS. IN ORDER TO BE ADMISSIBLE, THE AMOUNT OF THE BUSINESS MUST BE BASED ON THE BENEFITS CLAIMED IN THE INITIAL LAWSUIT AND MUST BE DETERMINABLE BY AN ARITHMETIC OPERATION." published in the Judicial Weekly of the Federation and its Gazette, Ninth Period, Volumes XV, April 2002, page 23, and XXVII, June 2008, page 23, with digital record numbers: 187320 and 169554, respectively.

MIGUEL ÁNGEL CÁRDENAS CEDEÑO
EXPERT TRANSLATOR
OF THE SUPREME COURT OF JUSTICE
FOR MEXICO CITY • TEL: 559000 1100

26

I respectfully request for Your Honor to issue the following as precautionary measures, of a provisional nature:

1.  A court order for Fuerza Deportiva del Club Leon, S.A. de C.V. to refrain from continuing to deliver to any third party other than Mexico Sports Distribution, LLC (including, without limitation, Fox Cable Network Services, LLC and/or Tubi, Inc.) the signal corresponding to any match played by the Leon Men's team as a home team.

2.  A court order for Fuerza Deportiva del Club Leon, S.A. de C.V. to refrain from allowing access to technical personnel designated by any third party other than Mexico Sports Distribution, LLC, to participate in the broadcasting of Leon Men's Team home games. To this end, it must, among other things, refrain from issuing passes to the Estadio Leon (Nou Camp) and/or any other venue where the Leon Men's Team home games are decided to be played.

3.  The personal detention of the legal representative of Fuerza Deportiva del Club Leon, S.A. de C.V., in terms of Article 1168, section I, of the Commercial Code.

## ADMISSIBILITY OF THE PRECAUTIONARY MEASURES

With regard to the requested precautionary measures, although the Commercial Code does not expressly provide for them in its articles, and even though Article 1168 of said code provides that in commercial trials such as the one at hand, only the "precautionary providences" provided for in said section (detention of person and seizure of property) are applicable, in terms of the provisions of the case law due to contradiction of theses resolved by the Honorable First Chamber of the Supreme Court of Justice of the Nation, which is transcribed below, it is feasible, in order to safeguard the existing de facto situation, for the conservative or assurance measures provided for in Articles 384 to 388 of the Federal Code of Civil Procedure to be applied by extension,

MIGUEL ÁNGEL CÁRDENAS CEDEÑO
EXPERT TRANSLATOR   27
OF THE SUPREME COURT OF JUSTICE
FOR MEXICO CITY • TEL.: 559000 1100

since through these, the administration of justice can be made more effective; hence, what is requested here is admissible.

The case law criterion referred to reads as follows:

"PRECAUTIONARY PROVIDENCES IN COMMERCIAL MATTERS. WHEN THE REQUEST FOR THE MEASURES IS NOT BASED ON THE CASES PROVIDED FOR IN ARTICLE 1168 OF THE COMMERCIAL CODE, THE RESTRICTION CONTAINED IN ARTICLE 1171 OF THE SAME LAW TO ISSUE THEM DOES NOT PREVENT THE APPLICATION BY EXTENSION OF THE ASSURANCE MEASURES PROVIDED FOR IN SECTIONS 384 TO 388 OF THE FEDERAL CODE OF CIVIL PROCEDURE (PARTIAL ABANDONMENT OF THESES 1a. LXXIX/2007 AND 1a. LXXXI/2007). Article 1168 of the Commercial Code regulates as precautionary measures what it calls precautionary providences, which may only be issued when there is fear that: (i) the person against whom a claim must be brought or has been brought leaves or hides; (ii) the assets over which a real action is to be exercised are concealed or squandered; and (iii) the assets over which the diligence is to be exercised are concealed or disposed of, provided that the action is personal and the debtor has no other assets. For its part, Article 1171 of the same ordinance provides that no precautionary providences may be issued other than those established in the code itself and that they shall exclusively be, in the case of the aforementioned section I, the detention of the person and, in the cases of the aforementioned sections II and III, the seizure of assets. In this sense, if in the Commercial Code the legislator only regulated and expressly named, in a complete and closed manner, the precautionary measure that he called precautionary providences, then, when in a commercial trial a request is made for a precautionary measure to be issued with the purpose of maintaining an existing de facto situation, and this is not based on any of the three hypotheses mentioned, it is indisputable that, on the one hand, the judge would be prevented from issuing a precautionary providence from those provided for in the aforementioned Article 1168 and, on the other hand, that by not being able to establish such a precautionary providence, the prohibition contained in Article 1171 would be inapplicable, given that the noted prohibition only has the purpose of regulating the terms and conditions for the precautionary measure called precautionary providences and provided for in the aforementioned Article 1168 to operate, and consequently, such prohibition cannot and should not be understood to extend to any precautionary measures that are legally applicable to commercial matters. In this regard, in the event of a request for a precautionary measure with the purpose of maintaining a de facto situation that is not based on any of the three hypotheses contained in Article 1168 of the Commercial Code, **the relevant content of the Federal Code of Civil Procedure would be applicable by extension in terms of Article 1054 of the same ordinance, which provides for the so-called assurance measures as precautionary measures, as established in its Articles 384 to 388.** The above leads this Court to partially divert

ROGELIO ARTURO ISLAS PEREZ 07/04/25 13:33:51 70fa6620636a6632000000000000000000000000000147cb

MIGUEL ÁNGEL CÁRDENAS CEDEÑO
EXPERT TRANSLATOR
OF THE SUPREME COURT OF JUSTICE
FOR MEXICO CITY · TEL: 559000 1100

from the criterion contained in isolated theses 1a. LXXIX/2007 and 1a. LXXXI/2007, in the part that provides for the intention and scope of the restrictive content of Article 1171 of the Commercial Code."[10]

As recognized by the Supreme Court of Justice of the Nation, there are precautionary measures that can be issued in a commercial trial other than those designated as "precautionary providences". The "precautionary providences" provided for in the Commercial Code are only a species of the "precautionary measures" genus. In this sense, precautionary measures may be issued that are distinct from "precautionary providences," since the latter are the only ones defined in a restrictive manner in the Commercial Code, as opposed to all precautionary measures. It should also be noted that the role of judges goes beyond the mere application of the law, since the courts of the Mexican State must analyze whether the applicable norm is in accordance with the Federal Constitution or international treaties on human rights, as established by the Plenary Session of the Supreme Court of Justice of the Nation, in connection with the procedure initiated to comply with the provisions of the Inter-American Court of Human Rights.

In this regard, the measures requested are admissible in terms of the facts described in the respective chapter and in accordance with what shall be explained below.

It is well-known law that the function of precautionary measures is to serve as a palliative for the time taken by the courts to resolve the disputes brought before them, with the aim of ensuring that the situation of the parties does not worsen due to the length of the proceedings, and to act as a provisional guarantee to ensure that compliance with any judgment issued in the proceedings is not impeded or becomes impossible.

Thus, the Political Constitution of the United Mexican States establishes the human right to effective judicial protection, by providing, in its relevant part:

"Article 17. ...

Every person has the right to justice administered by courts that are able to administer it within the time limits and terms established by

---

[10] Period: Tenth. Record: 2003884. Thesis Type: Case Law. Court: First Chamber. Matter(s): Civil. Source: Judicial Weekly of the Federation and its Gazette. Thesis: 1a./J. 27/2013 (10a.), Book XXI, June 2013, Volume I, Page 552.

MIGUEL ÁNGEL CÁRDENAS CEDEÑO
EXPERT TRANSLATOR   29
OF THE SUPREME COURT OF JUSTICE
FOR MEXICO CITY • TEL: 559000 1100

ROGELIO ARTURO ISLAS PEREZ 07/04/25 13:33:51
706a66206c6a66a632000000000000000000000000001447cb

law, **issuing their decisions promptly, completely, and impartially**. Their service shall be free of charge, and court costs are therefore prohibited.

…

Federal and local laws shall establish the necessary means to guarantee the independence of the courts and the full enforcement of their decisions."

A simple reading of the transcribed paragraph reveals that our Constitution provides that the judicial authority must issue judgments that are fully enforceable, that is, that are effective, that can be executed or fulfilled from a practical point of view in order to achieve real protection of the interests of the prevailing party in a trial.

In this regard, precautionary measures are considered as a mechanism intended to preserve rights and interests during the trial, with the aim of ensuring that the final judgment issued at the time is effective.

Thus, effective judicial protection not only includes the issuance of final judgments, but also the issuance of precautionary measures to ensure that the judgment issued is effectively enforced.

On this aspect, the American Convention on Human Rights, in its Articles 8 and 25, provides:

"Article 8. Judicial Guarantees

1.- Every person has the right to be heard, with due guarantees and **within a reasonable time**, by a competent, independent and impartial judge or court, previously established by law, in the substantiation of any criminal accusation made against them, or for the determination of their rights and obligations of a civil, labor, fiscal, or any other nature."

"Article 25. Judicial Protection

1.    **Every person has the right to simple and prompt recourse or any other effective remedy before judges or courts of competent jurisdiction, for protection against acts that violate their fundamental rights recognized by the Constitution,** the law, or this Convention, even when such violation is committed by persons acting in an official capacity.

2.    The Party States undertake to:

MIGUEL ÁNGEL CÁRDENAS CEDEÑO
EXPERT TRANSLATOR 30
OF THE SUPREME COURT OF JUSTICE
FOR MEXICO CITY • TEL: 559000 1100

a) ensure that the competent authority provided for by the State's legal system decides on the rights of any person claiming such recourse;

b) develop the possibilities of judicial recourse, and

c) **ensure compliance by the competent authorities with any decision where the recourse is deemed appropriate."**

Effective judicial protection is therefore elevated to the rank of a fundamental right.

The Inter-American Court of Human Rights determined that Article 25 of the American Convention on Human Rights imposes two specific responsibilities on the State. The first is to normatively enshrine and ensure the due application of effective remedies before the competent authorities, which protect all persons under their jurisdiction against acts that violate their fundamental rights or that entail the determination of their rights and obligations (Acevedo Jaramillo et al. vs. Peru). The second is to guarantee the means to execute the respective decisions and final judgments issued by such competent authorities, so that the declared or recognized rights are effectively protected (Baena Ricardo et al. vs. Panama).

The opposite would mean the very denial of the right involved. (Acevedo Buendia et al. vs. Peru, Acevedo Jaramillo et al. vs. Peru).

As seen above, the Inter-American Court of Human Rights determined the scope of the fundamental right to effective judicial protection, concluding that States are obligated to guarantee the means to enforce judgments, thereby ensuring real protection of the rights involved. Consequently, any provision that violates the effective protection of the right in question shall be contrary to Article 25 of the American Convention on Human Rights and, consequently, to Article 17 of the Political Constitution.

This means that it is the Judge's constitutional obligation to guarantee the effective enforcement of a judgment through precautionary measures, whether expressly regulated by the legal system, or those that the Judge deems necessary in an ad hoc basis to guarantee the effective protection of the right.

MIGUEL ÁNGEL CÁRDENAS CEDEÑO
EXPERT TRANSLATOR
OF THE SUPREME COURT OF JUSTICE
FOR MEXICO CITY • TEL.: 559000 1100

All of the above is supported by the ruling issued by the Third Collegiate Court in Civil Matters of the First Circuit, under file number R.C. 253/2011, available on the website of the Federal Judiciary Council[11]; and leads to the conclusion that in this specific case, even though some of the precautionary measures requested are not specifically regulated by the Commercial Code, they are supported by Articles 1 and 17 of the Political Constitution, insofar as they protect the fundamental right to effective judicial protection, in light of what is expressly requested in this case; which is expressly regulated by Article 384 of the Federal Code of Civil Procedure, which is applicable by extension:

> "Art. 384.- Before the trial begins, **or during its progress**, all **necessary measures may be ordered to maintain the existing de facto situation**. These measures shall be ordered without hearing the other party, and shall not admit any recourse. The resolution denying the measure is appealable."

Regarding the above, the following case law also applies:

> "PRECAUTIONARY MEASURES OR PRECAUTIONARY PROVIDENCES IN COMMERCIAL TRIALS. THEY ARE INHERENT TO THE RIGHT TO JURISDICTION, SO THE LIMITATION OF THEIR GRANTING MUST BE BASED ON A FUNCTIONAL INTERPRETATION AND IN COMPLIANCE WITH ARTICLE 1168 OF THE COMMERCIAL CODE AND WITH ARTICLES 1 AND 17 OF THE CONSTITUTION. In commercial trials, precautionary measures or precautionary providences may be ordered to maintain a pre-existing situation, since these types of instruments are inherent to the right to jurisdiction, as they have the purpose of making the Judges' rulings effective, as provided for in Article 17, seventh paragraph, of the Political Constitution of the United Mexican States, which provides that: "Federal and local laws shall establish the necessary means to guarantee the independence of the courts and the full enforcement of their decisions." Thus, the reform published in the Official Gazette of the Federation on January 10, 2014 to Articles 1168 and 1171 of the Commercial Code, **was not intended to prevent the necessary precautionary measures or providences from being ordered in commercial trials to enforce judgments, since its purpose was limited to the interpretation of clear and precise rules that allow creditors to obtain effective collection of their outstanding debts by means of the detention of persons or the seizure of assets.** Thus, the amended text of the invoked Article 1168, first paragraph, which establishes: "In commercial trials, only the precautionary measures or precautionary providences provided for in this Code may be issued, which are the following: (...)", **should not be interpreted under a simple literality criterion**, since it would be prohibitive in relation to the duty of the ordinary Judge to keep the subject matter of the trial intact, which, of

---

[11] http://www.dgepj.cjf.gob.mx/OUT/0027000010769054000303003AST.PDF

MIGUEL ÁNGEL CÁRDENAS CEDEÑO
EXPERT TRANSLATOR 32
OF THE SUPREME COURT OF JUSTICE
FOR MEXICO CITY · TEL: 559000 1100

ROGELIO ARTURO ISLAS PEREZ 07/04/25 13:33:51
70óa6ó2063óa66320000000000000000000000000147cb

ROGELIO ARTURO ISLAS PEREZ 07/04/25 13:33:51 706a62063 6a6632000000000000000000000147cb

course, would violate the fundamental rights recognized by the international instruments signed by the Mexican State and by the Political Constitution of the United Mexican States, in accordance with its Article 1. However, a functional and compliant interpretation of that section provides a guideline to note that it is a limiting rule by providing for two assumptions applicable to a specific de facto situation, **which, however, does not restrict the possibility of the judge, in compliance with his function in relation to the granting and admissibility of the different precautionary measures, adapting them to the circumstances and needs of each case, since these measures must be flexible, even with the possibility of amendment as needed in the procedure in which they are issued. Furthermore, when granting them, they must be duly founded and motivated, as well as with regard to the guarantees required, in order to avoid abuses by the parties that request them. Therefore, such interpretation is in accordance with the fundamental rights to effective judicial protection and access to the administration of justice recognized both by the constitutional article in question and by precept 25 of the American Convention on Human Rights."**[12]

In short, the limitation established by the legislator in Article 1171 of the Commercial Code in no way restricts the right of my clients to request any other conservation measure aimed at safeguarding the subject matter of the litigation and, consequently, in accordance with the mandatory case law previously invoked, **Article 384 of the Federal Code of Civil Procedure is applicable to the case.**

Now, as it can be understood from what has been pointed out in the section relating to the facts of this document, in this case the requirements of appearance of right, well-founded fear and danger in the delay, inherent to any precautionary measure are met, since:

Appearance of right: My clients submit with their claim, originals or certified copies of the documents shown as **Exhibits 4) to 13)** hereof.

From the aforementioned documents, it is *prima facie* evident that the claims are valid, since from their mere reading it is noted that: (i) the right of first negotiation granted by Leon to FSM to match the offer of any third party interested in acquiring the license for the rights to broadcast the games that the Leon Men's Team plays as home team; and (ii) a third party other than FSM -Tubi and/or Fox Cable- is currently

---

[12] Period: Tenth Period. Record: 2020903. Instance: Circuit Plenary Sessions. Thesis Type: Case Law. Source: Gazette of the Judicial Weekly of the Federation. Book 71, October 2019, Volume III. Matter(s): Constitutional, Civil, Civil. Thesis: PC.I.C. J/94 C (10a.). Page: 2979.

MIGUEL ÁNGEL CÁRDENAS CEDEÑO
EXPERT TRANSLATOR
OF THE SUPREME COURT OF JUSTICE
FOR MEXICO CITY · TEL: 559000 1100

33

broadcasting the home games of the Leon Men's Team, despite the fact that Leon never allowed FSM to exercise the aforementioned right of first negotiation, since at no time did it notify FSM of the offer made by Fox Cable (or by any other subsidiary or affiliate of Fox Corp), which was its obligation under the Leon Agreement, and an essential requirement for FSM to be able to exercise its right; which is sufficient, for the moment, for the granting of the requested precautionary measure, since if Tubi (or any other third party other than FSM) continues to broadcast the Leon Men's Team games, damages shall continue to be unlawfully caused to MDM.

Now, legal plausibility is a prerequisite that conditions the admissibility of the measure **and aims for an objective and serious credibility** that rules out a manifestly unfounded, reckless, or highly questionable claim. This is justified because precautionary measures, rather than being intended to do justice, are intended to give justice time to effectively accomplish its objective.

In this case, the appearance of right is linked to the main claim that Leon committed an unlawful act, consisting of failing to observe the right of first negotiation agreed in favor of FSM in the Leon Agreement, thereby causing a loss of assets and lost profits to MDM, as the marketer of the Leon Men's Team games.

Therefore, the harmful effects of any act carried out in violation of this right of first negotiation, which is in force, binding, and valid in accordance with Article 78 of the Commercial Code, must be suspended.

Well-founded fear: In the event that Leon is not ordered to refrain from delivering the signal to Fox Cable and/or Tubi and/or any other third party to broadcast the Leon Men's Team home games, Leon will be allowed to continue committing unlawful acts, and my clients will continue to lose the opportunity to broadcast and market Leon Men's Team games. In addition to the fact that Tubi has already broadcasted three Leon Men's Team home games: Futbol Club Juarez, Club Deportivo Guadalajara and Deportivo Toluca, and there are at least five more games in the Torneo Clausura 2025 of the Liga MX where the Leon Men's Team will play as home team[13], so there is a well-founded fear that, given the announcement made by Tubi -see **Exhibit 12)**-, it (or some other

---

[13] Leon Men's Team will play at home against Club Tigres, Club Tijuana, Club Universidad Nacional, Club Puebla, Club de Futbol Monterrey.

MIGUEL ÁNGEL CÁRDENAS CEDEÑO
EXPERT TRANSLATOR 34
OF THE SUPREME COURT OF JUSTICE
FOR MEXICO CITY · TEL: 559000 1100

third party other than FSM, such as Fox Cable) will broadcast and market the upcoming home games of the Leon Men's Team.

Danger in delay: The urgent adoption of the requested precautionary measure is necessary, considering, as stated, that in light of the media announcement, Tubi will continue to exclusively broadcast the Leon Men's Team games, given Leon's failure to comply with the right of first negotiation contained in Clause 7 of the Leon Agreement. In addition to the fact that, as it can be seen from the request made by Leon to FSM on February 5, 2025 -**Exhibit 14)**-, the co-defendant hereof Leon seeks to ignore the right of first negotiation contained in Clause 7 of the Leon Agreement and, above all, has required FSM to pay amounts to which it has no right.

For this purpose, the following criteria apply:

"SUSPENSION. IN ORDER TO DECIDE ON IT, IT IS FEASIBLE, WITHOUT FAILING TO OBSERVE THE REQUIREMENTS CONTAINED IN ARTICLE 124 OF THE AMPARO LAW, TO MAKE A PROVISIONAL ASSESSMENT OF THE UNCONSTITUTIONALITY OF THE CHALLENGED ACT.-

**The suspension of the challenged acts is a precautionary measure, the prerequisites of which are the appearance of right and the danger in delay. The first of these is based on superficial knowledge aimed at reaching a decision of mere probability regarding the existence of the right discussed in the process. This requirement, applied to the suspension of the challenged acts, implies that, in order to grant the measure, without failing to observe the requirements contained in Article 124 of the Amparo Law, it is sufficient to verify the appearance of right invoked by the complainant, such that, according to a calculation of probabilities, it is possible to anticipate that the claimed act shall be declared unconstitutional in the amparo judgment.** This examination is also based on Article 107, Section X, of the Constitution, which establishes that, in order to grant the suspension measure, the nature of the alleged violation must be taken into account, among other factors, which implies that the right that is said to have been violated must be taken into account. That is to say, the examination of the nature of the alleged violation not only includes the concept of violation alleged by the complainant, but also involves the fact or act that entails the violation, considering its characteristics and significance. In any case, said analysis must be carried out without prejudging legal certainty, that is, the constitutionality or unconstitutionality of the acts challenged, since this can only be determined in the amparo judgment based on a broader procedure and with more information, always taking into account that the determination made in relation to the suspension should not influence the substantive judgment, since the former is only provisional in nature and is based on mere hypotheses, and not on the certainty of the existence of the claims, with the understanding

MIGUEL ÁNGEL CÁRDENAS CEDEÑO
EXPERT TRANSLATOR    35
OF THE SUPREME COURT OF JUSTICE
FOR MEXICO CITY · TEL: 559000 1100

that it must be weighed against the other elements required for the suspension, because if the harm to the social interest or public order is greater than the damages that are difficult to repair that the complainant may suffer, the requested suspension must be denied, since the preservation of public order or the interest of society are above the particular interest affected. With this procedure, any excess in the judge's examination will be avoided, which will always be subject to the rules governing suspension."[14]

"SUSPENSION IN INDIRECT AMPARO. RELATIONSHIP BETWEEN THE RESTORATIVE, PROVISIONAL AND ANTICIPATED EFFECT THAT SHOULD BE GIVEN IN TERMS OF ARTICLE 147, SECOND PARAGRAPH, OF THE LAW ON THE MATTER, WITH THE APPEARANCE OF RIGHT AND THE DANGER IN DELAY. Pursuant to Article 147, second paragraph, of the Amparo Law, in force since April 3, 2013, in cases where suspension is admissible, given the nature of the acts challenged, the court shall order for things to remain in their current state and, if legally and materially possible, shall provisionally restore the complainant's enjoyment of the violated right, while a final judgment is issued in the amparo. Thus, from the opinion issued by the Senate of the Republic regarding the initiative of said ordinance, it is estimated that the aforementioned provision originated because, in accordance with the jurisdictional practice based on the Amparo Law of 1936, cases were recognized in which the suspension could not be granted with an effective scope and consistent with the premises of avoiding the consummation of the alleged violations, making them difficult or impossible to repair, and of safeguarding the subject matter of the amparo, if it was not given a restorative, provisional and anticipated effect, because the challenged act was already executed at the time the measure was requested and from a superficial knowledge and mere probability of the violation invoked by the complaining party, which would result in an objective and serious credibility that would rule out a manifestly unfounded, reckless or questionable claim (appearance of right), as well as the danger that, if the execution of the act were to continue, the claim brought would be frustrated due to the consummation of the violation and the subject matter of the amparo would be lost (danger in delay); criteria that went beyond those relating to the suspension being only for conservative effects and that it was not possible, when deciding on its granting, to address any study of the constitutionality of the challenged acts, as the latter was the subject of the judgment resolving the merits of the amparo. Under these conditions, the provision contained in the second paragraph of the cited Article 147 is closely related to the provisional look at the merits of the matter to which the judge is obliged, in order to determine the appearance of right, as referred to in Articles 107, Section X, of the Political Constitution of the United Mexican States, and 138 of its regulatory law, but, fundamentally, it leads to the analysis of the danger in the delay, given the nature of the precautionary measure that corresponds to the suspension of the act challenged in the amparo trial, in the understanding that the analysis appropriate for such

---

[14] Digital record: 200136. Instance: Plenary Session. Ninth Period. Matter(s): Common. Thesis: P./J. 15/96. Source: Judicial Weekly of the Federation and its Gazette. Volume III, April 1996, page 16. Type: Case Law.

MIGUEL ÁNGEL CÁRDENAS CEDEÑO
EXPERT TRANSLATOR
OF THE SUPREME COURT OF JUSTICE
FOR MEXICO CITY • TEL: 559000 1100

36

ROGELIO ARTURO ISLAS PEREZ 07/04/25 13:33:51 706a62063a663200000000000000000000000147cb

37

danger, as understood in the initially indicated opinion, involves an estimation of mere probability that, if the act is not suspended, the alleged violations will be consummated and shall become difficult or impossible to repair; this, in the substantive aspect, and the subject matter of the amparo shall disappear, as an adjective consequence of the delay in the suspension of the act. Therefore, when in the same normative portion being analyzed, the exceptional, provisional and anticipated restorative effect that may be given to the suspension of the act is conditioned on its nature revealing that it is legally and materially possible, the determination of these last aspects must involve resolving on whether there is a real danger that if the suspension does not have the referred effect, the alleged violations will be consummated, and shall become difficult or even impossible to repair in the amparo judgment, and the substantive matter of the main trial will be lost with it; with the understanding that these expressions constitute normative and control elements that the legislator provided for, so that granting the suspension, exceptionally, a restorative, provisional and anticipated effect, does not result in a decision that is arbitrary or susceptible to abuse, because if this were the case, without noticing the danger in the delay and the adjective risk that the subject matter of the amparo would disappear, the purpose considered by the legislator to provide for said measure with the exceptional scope described would be distorted. All of this, of course, with the understanding that, in addition to the appearance of right and the danger in delay, it is inexcusable to demonstrate that the social interest is not affected by the granting of the measure and the fulfillment of the other requirements provided for in the Amparo Law, since if such an affectation exists and it is greater than that which the complaining party would feel, according to its claims, the suspension would be inadmissible and an analysis as to the most effective effect that would have to be given to it would be unnecessary, which does not contradict the essence of the case law criteria that guided the adoption of the current second paragraph of Article 147 of the Amparo Law, contained in case law P./J. 15/96 and P./J. 16/96, of the Plenary Session of the Supreme Court of Justice of the Nation, issued based on the Amparo Law currently repealed, but, in terms of the sixth transitory article of the current regulations on the subject matter, viewed in relation to the legislative processes originating from the current legislation, serve as a guide to determine the specific nature of the judgment of weighing the appearance of right and the danger in the delay. However, its applicability cannot be full in accordance with current legislation because, as stated, the Constituent ordered that greater requirements be observed to regulate the assessment and the granting of the measure, in order to prevent abuse and control the discretion of the Judge when granting it, so that such discretion does not result in arbitrariness, with the consequent injury to the social interest in granting the measure with an exceptional effect, when this is not justified and, even before the enactment of the law in force, the Supreme Court itself restricted the applicability of those criteria to compliance with the requirements of Article 124 of the repealed regulations and, under the current regulations, the same principle of compliance with

each and every one of those that must be satisfied to provide for the precautionary measure must govern."[15]

It is important to note that the granting of these precautionary measures does not prejudice the merits of my clients' claims, nor the rights of the defendant, so their actions and means of defense are expedited.

Scope of the measures: The measures requested are perfectly limited in time, since they must remain in force only until the moment in which this trial is ended by means of a final judgment and only affect Leon (and, where applicable, any third party other than FSM to whom Leon has unlawfully granted the right to broadcast the games that the Leon Men's Team plays as home team, in violation of FSM's right, including, but not limited to, Tubi, Inc, and Fox Cable Network Services, LLC), and any damages and losses caused by said measure shall be covered by the bond set for this purpose by Your Honor.

For this purpose, the following criteria apply:

> "SUSPENSION. IN ORDER TO DECIDE ON IT, IT IS FEASIBLE, WITHOUT FAILING TO OBSERVE THE REQUIREMENTS CONTAINED IN ARTICLE 124 OF THE AMPARO LAW, TO MAKE A PROVISIONAL ASSESSMENT OF THE UNCONSTITUTIONALITY OF THE CLAIMED ACT.-
> The suspension of the challenged acts **is a precautionary measure, the prerequisites of which are the appearance of right and the danger in delay. The first of these is based on superficial knowledge aimed at reaching a decision of mere probability regarding the existence of the right discussed in the process.** This requirement, applied to the suspension of the challenged acts, implies that, in order to grant the measure, without failing to observe the requirements contained in Article 124 of the Amparo Law, it is sufficient to verify the appearance of right invoked by the complainant, such that, according to a calculation of probabilities, it is possible to anticipate that the claimed act shall be declared unconstitutional in the amparo judgment. This examination is also based on Article 107, Section X, of the Constitution, which establishes that, in order to grant the suspension measure, the nature of the alleged violation must be taken into account, among other factors, which implies that the right that is said to have been violated must be taken into consideration. That is to say, the examination of the nature of the alleged violation not only includes the concept of violation alleged by the complainant, but also involves the fact or act that entails the violation, considering its characteristics

---

[15] Digital record: 2006949. Instance: Circuit Collegiate Courts. Tenth Period. Matter(s): Common. Thesis: IV.2o.A.63 K (10a.). Source: Gazette of the Judicial Weekly of the Federation. Book 8, July 2014, Volume II, page 1316. Type: Isolated

MIGUEL ÁNGEL CÁRDENAS CEDEÑO
EXPERT TRANSLATOR    38
OF THE SUPREME COURT OF JUSTICE
FOR MEXICO CITY • TEL: 559000 1100

ROGELIO ARTURO ISLAS PEREZ 07/04/25 13:33:51
706a662063a66320000000000000000000000147cb

ROGELIO ARTURO ISLAS PEREZ 07/04/25 13:33:51
70fa662063fa663200000000000000000000000000000147cb

and significance. In any case, said analysis must be carried out without prejudging legal certainty, that is, the constitutionality or unconstitutionality of the acts challenged, since this can only be determined in the amparo judgment based on a broader procedure and with more information, always taking into account that the determination made in relation to the suspension should not influence the substantive judgment, since the former is only provisional in nature and is based on mere hypotheses, and not on the certainty of the existence of the claims, with the understanding that it must be weighed against the other elements required for the suspension, because if the harm to the social interest or public order is greater than the damages that are difficult to repair that the complainant may suffer, the requested suspension must be denied, since the preservation of public order or the interest of society are above the particular interest affected. With this procedure, any excess in the judge's examination will be avoided, which will always be subject to the rules governing suspension."[16]

"SUSPENSION IN INDIRECT AMPARO. RELATIONSHIP BETWEEN THE RESTORATIVE, PROVISIONAL AND ANTICIPATED EFFECT THAT SHOULD BE GIVEN IN TERMS OF ARTICLE 147, SECOND PARAGRAPH, OF THE LAW ON THE MATTER, WITH THE APPEARANCE OF RIGHT AND THE DANGER IN DELAY. Pursuant to Article 147, second paragraph, of the Amparo Law, in force since April 3, 2013, in cases where suspension is admissible, given the nature of the acts challenged, the court shall order for things to remain in their current state and, if legally and materially possible, shall provisionally restore the complainant's enjoyment of the violated right, while a final judgment is issued in the amparo. Thus, from the opinion issued by the Senate of the Republic regarding the initiative of said ordinance, it is estimated that the aforementioned provision originated because, in accordance with the jurisdictional practice based on the Amparo Law of 1936, cases were recognized in which the suspension could not be granted with an effective scope and consistent with the premises of avoiding the consummation of the alleged violations, making them difficult or impossible to repair, and of safeguarding the subject matter of the amparo, if it was not given a restorative, provisional and anticipated effect, because the challenged act was already executed at the time the measure was requested and from a superficial knowledge and mere probability of the violation invoked by the complaining party, which would result in an objective and serious credibility that would rule out a manifestly unfounded, reckless or questionable claim (appearance of right), **as well as the danger that, if the execution of the act were to continue, the claim brought would be frustrated due to the consummation of the violation and the subject matter of the amparo would be lost (danger in delay);** criteria that went beyond those relating to the suspension being only for conservative effects and that it was not possible, when deciding on its granting, to address any study of the constitutionality of the challenged acts, as the latter was the subject of the judgment resolving the merits of the amparo. Under these

---

[16] Period: Ninth Period. Record: 917974. Instance: Plenary Session. Thesis Type: Case Law. Source: Appendix 2000. Volume VI, Common, SCJN Case Law. Matter(s): Common. Thesis: 440. Page: 374.

MIGUEL ÁNGEL CÁRDENAS CEDEÑO
EXPERT TRANSLATOR    39
OF THE SUPREME COURT OF JUSTICE
FOR MEXICO CITY • TEL: 559000 1100

conditions, the provision contained in the second paragraph of the cited Article 147 is closely related to the provisional look at the merits of the matter to which the judge is obliged, in order to determine the appearance of right, as referred to in Articles 107, Section X, of the Political Constitution of the United Mexican States, and 138 of its regulatory law, **but, fundamentally, it leads to the analysis of the danger in the delay, given the nature of the precautionary measure that corresponds to the suspension of the act challenged in the amparo trial, in the understanding that the analysis appropriate for such danger, as understood in the initially indicated opinion, involves an estimation of mere probability that, if the act is not suspended, the alleged violations will be consummated and shall become difficult or impossible to repair; this, in the substantive aspect, and the subject matter of the amparo shall disappear, as an adjective consequence of the delay in the suspension of the act.** Therefore, when in the same normative portion being analyzed, the exceptional, provisional and anticipated restorative effect that may be given to the suspension of the act is conditioned on its nature revealing that it is legally and materially possible, the determination of these last aspects must involve resolving on whether there is a real danger that if the suspension does not have the referred effect, the alleged violations will be consummated, and shall become difficult or even impossible to repair in the amparo judgment, and the substantive matter of the main trial will be lost with it; with the understanding that these expressions constitute normative and control elements that the legislator provided for, so that granting the suspension, exceptionally, a restorative, provisional and anticipated effect, does not result in a decision that is arbitrary or susceptible to abuse, because if this were the case, without noticing the danger in the delay and the adjective risk that the subject matter of the amparo would disappear, the purpose considered by the legislator to provide for said measure with the exceptional scope described would be distorted. All of this, of course, with the understanding that, in addition to the appearance of right and the danger in delay, it is inexcusable to demonstrate that the social interest is not affected by the granting of the measure and the fulfillment of the other requirements provided for in the Amparo Law, since if such an affectation exists and it is greater than that which the complaining party would feel, according to its claims, the suspension would be inadmissible and an analysis as to the most effective effect that would have to be given to it would be unnecessary, which does not contradict the essence of the case law criteria that guided the adoption of the current second paragraph of Article 147 of the Amparo Law, contained in case law P./J. 15/96 and P./J. 16/96, of the Plenary Session of the Supreme Court of Justice of the Nation, issued based on the Amparo Law currently repealed, but, in terms of the sixth transitory article of the current regulations on the subject matter, viewed in relation to the legislative processes originating from the current legislation, serve as a guide to determine the specific nature of the judgment of weighing the appearance of right and the danger in the delay. However, its applicability cannot be full in accordance with current legislation because, as stated, the Constituent ordered that greater requirements be observed to regulate the assessment and the granting of the measure, in order to prevent abuse and control the discretion of the Judge when

ROGELIO ARTURO ISLAS PEREZ 07/04/25 13:33:51
708a6620636a66320000000000000000000000000147cb

MIGUEL ÁNGEL CÁRDENAS CEDEÑO
EXPERT TRANSLATOR
OF THE SUPREME COURT OF JUSTICE
FOR MEXICO CITY • TEL: 559000 1100

granting it, so that such discretion does not result in arbitrariness, with the consequent injury to the social interest in granting the measure with an exceptional effect, when this is not justified and, even before the enactment of the law in force, the Supreme Court itself restricted the applicability of those criteria to compliance with the requirements of Article 124 of the repealed regulations and, under the current regulations, the same principle of compliance with each and every one of those that must be satisfied to provide for the precautionary measure must govern."[17]

In accordance with Article 1378, Section VIII, of the Commercial Code, and without exhausting the right provided for in Article 1383 of the same ordinance, my clients offer the following:

## EVIDENCE

1.-   **THE CONFESSIONAL EVIDENCE** delivered by Fuerza Deportiva del Club Leon, S.A. de C.V., through an attorney-in-fact with sufficient authority to answer questions; who must be summoned at the address indicated in the proceedings, in order to appear before this Honorable Court to answer the questions that will be presented to them on the day and time indicated for that purpose, according to the list of questions that will be displayed at the time; under the warning that, if they fail to appear without just cause, they shall be declared a confessor of those that are previously qualified by Your Honor.

I link this evidence to all the facts of the lawsuit and the requested precautionary measure. And said evidence will prove, among other things, that the legal entity entered into the Leon Agreement and the Amendment Agreement; the content of Clause 7 and the right of first negotiation contained therein; that it required payment from FSM and, in its notification dated February 5, 2025, acknowledged the existence of such right; and that it entered into an agreement with Fox Cable and/or Tubi and/or any third party other than FSM for the broadcast of the Leon Men's Team home games, in violation of the aforementioned right of first negotiation.

---

[17] Period: Tenth Period. Record: 2006949. Instance: Circuit Collegiate Courts. Thesis Type: Isolated. Source: Gazette of the Judicial Weekly of the Federation. Book 8, July 2014, Volume II. Matter(s): Common. Thesis: IV.2o.A.63 K (10a.). Page: 1316

MIGUEL ÁNGEL CÁRDENAS CEDEÑO
EXPERT TRANSLATOR
OF THE SUPREME COURT OF JUSTICE
FOR MEXICO CITY • TEL: 559000 1100

41

The reason why it is considered that these matters will be proven is that, from the responses given by the respondent, Your Honor shall be able to ascertain the merits of the action and the claims.

**2.-    THE CONFESSIONAL EVIDENCE** delivered by Tubi, Inc., through an attorney-in-fact with sufficient authority to answer questions; who must be summoned at the address indicated in the proceedings, in order to appear before this Honorable Court to answer the questions that will be presented to them on the day and time indicated for that purpose, according to the list of questions that will be displayed at the time; under the warning that, if they fail to appear without just cause, they shall be declared a confessor of those that are previously qualified by Your Honor.

I link this evidence to all the facts of the lawsuit and the requested precautionary measure, which will prove, among other things, that this legal entity broadcasts the Leon Men's Team home games, as reported to the media since December 18, 2024; which has already broadcast the games of Leon Men's Team against Futbol Club Juarez, Club Deportivo Guadalajara and Deportivo Toluca; thus collaborating with Leon's unlawful conduct by broadcasting the Leon Men's Team home games under an agreement whose illegality —arising from the fact that it was entered into in violation of the right of first negotiation established in favor of FSM— it is aware of.

The reason why it is considered that these matters will be proven is that, from the responses given by the respondent, Your Honor shall be able to ascertain the merits of the action and the claims.

**3.-    THE CONFESSIONAL EVIDENCE** delivered by Fox Cable Networks, LLC, through an attorney-in-fact with sufficient authority to answer questions; who must be summoned at the address indicated in the proceedings, in order to appear before this Honorable Court to answer the questions that will be presented to them on the day and time indicated for that purpose, according to the list of questions that will be displayed at the time; under the warning that, if they fail to appear without just cause, they shall be declared a confessor of those that are previously qualified by Your Honor.

I link this evidence to all the facts of the lawsuit and the requested precautionary measure, which will prove, among other things, that this legal entity entered into an

MIGUEL ÁNGEL CÁRDENAS CEDEÑO
EXPERT TRANSLATOR    42
OF THE SUPREME COURT OF JUSTICE
FOR MEXICO CITY • TEL: 559000 1100

ROGELIO ARTURO ISLAS PEREZ 07/04/25 13:33:51
706a62063ea66320000000000000000000000147cb

agreement with Leon in violation of FSM's right of first negotiation (violation it was aware of), and/or through any of its subsidiaries or affiliates) the Leon Men's Team home games; thus collaborating with Leon's unlawful conduct by entering with the latter into an agreement whose illegality —arising from the fact that it was entered into in violation of the right of first negotiation established in favor of FSM— it is aware of.

The reason why it is considered that these matters will be proven is that, from the responses given by the respondent, Your Honor shall be able to ascertain the merits of the action and the claims.

4.-    **THE DOCUMENTARY EVIDENCE** consisting of a copy of the Leon Agreement and its respective translation into Spanish; which is attached hereto as **Exhibit 4).**

Under oath, I hereby declare that my clients do not have this document in its original form or a certified copy, as it was never delivered to them by FSLA. Therefore, pursuant to Article 89 of the Federal Code of Civil Procedure, which is applicable by extension, I hereby request Your Honor to require Leon to produce the original or a certified copy of this document when responding to the lawsuit, warning them that failure to do so shall result in the assertions my clients make in this lawsuit being deemed true.

I link this evidence to all the facts of the lawsuit and to the requested precautionary measure, which shall demonstrate the obligations assumed by the parties in said agreement of wills.

The reason this evidence is deemed to prove my claims is that it concerns the agreement between FSM and Leon, which contains the right of first negotiation violated by said co-defendant.

5.-    **THE DOCUMENTARY EVIDENCE** consisting of the amendment agreement to the Leon Agreement dated October 4, 2017, between FSM and Leon, and its respective translation into Spanish; which is attached hereto as **Exhibit 5).**

Under oath, I hereby declare that my clients do not have this document in its original form or a certified copy, as it was never delivered to them by FSLA. Therefore,

MIGUEL ÁNGEL CÁRDENAS CEDEÑO
EXPERT TRANSLATOR    43
OF THE SUPREME COURT OF JUSTICE
FOR MEXICO CITY • TEL: 559000 1100

pursuant to Article 89 of the Federal Code of Civil Procedure, which is applicable by extension, I hereby request Your Honor to require Leon to produce the original or a certified copy of this document when responding to the lawsuit, warning them that failure to do so shall result in the assertions my clients make in this lawsuit being deemed true.

I link this evidence to all the facts of the lawsuit and to the requested precautionary measure, which shall demonstrate the obligations assumed by the parties in said agreement of wills.

The reason this evidence is deemed to prove my claims is that it concerns the amendment agreement to the agreement between FSM and Leon, which contains the right of first negotiation violated by said co-defendant.

6.- **THE DOCUMENTARY EVIDENCE** consisting of assignment agreement between FSLA and FSM, with its respective translation into Spanish; which is attached hereto as **Exhibit 6)**.

I link this evidence to all the facts of the lawsuit and to the requested precautionary measure, which shall demonstrate the obligations assumed by the parties in said agreement of wills.

The reason this evidence is deemed to prove my claims is that it involves the assignment of rights to the Leon Agreement to FSM.

7.- **THE DOCUMENTARY EVIDENCE** consisting of the letter delivered via email to Leon regarding the assignment agreement between FSLA and FSM; which is attached hereto in English and its Spanish translation as **Exhibit 7)**.

I link this evidence to all the facts of the lawsuit and the requested precautionary measure, which shall prove that Leon was aware that FSM is the new owner of the Leon Agreement and its amendment agreement.

The reason this evidence is deemed to prove my claims is that it involves the document through which my client evidences its legal standing in this trial.

MIGUEL ÁNGEL CÁRDENAS CEDEÑO
EXPERT TRANSLATOR
OF THE SUPREME COURT OF JUSTICE
FOR MEXICO CITY • TEL: 559000 1100

**8.-   THE DOCUMENTARY EVIDENCE** consisting of printouts of the invoices issued by Leon to FSM from 2022 to 2024; and a USB storage device containing said invoices in PDF format; which are attached hereto together as **Exhibit 8)**.

I link this evidence to all the facts of the lawsuit and to the requested precautionary measure, which shall prove that Leon was aware that FSM was the new owner of the Leon Agreement and its amendment agreement, and that Leon consented to the assignment that resulted in the replacement of the owner; and that, pursuant to the Leon Agreement, Leon issued invoices to [*sic*] as consideration for the exclusive broadcasting rights.

The reason this evidence is deemed to prove my claims is that it involves a document through which my client evidences its legal standing in this trial.

**9.-   THE DOCUMENTARY EVIDENCES** consisting of printouts of payments made by FSM to Leon; which are attached hereto together as **Exhibit 9)**.

I link this evidence to all the facts of the lawsuit and the requested precautionary measure, which shall prove that Leon was aware that FSM was the new owner of the Leon Agreement and its amendment agreement, and that Leon consented to the assignment that resulted in the replacement of the owner.

The reason this evidence is deemed to prove my claims is that it concerns the receipts that evidence the payments made by FSM to Leon and that the latter received without conditions.

**10.-   THE DOCUMENTARY EVIDENCE** consisting of public instrument number 139,540 dated February 11, 2025, granted before Mr. Alfonso Zermeño Infante, Notary Public Number 5 for Mexico City; which is attached hereto as **Exhibit 10)**.

I link this evidence to all the facts of the lawsuit and the requested precautionary measure, which shall prove that FSM broadcasted the Leon Men's Team games, under the terms of the Leon Agreement, through the Fox Sports Mexico channels.

ROGELIO ARTURO ISLAS PEREZ 07/04/25 13:33:51
70ba662063ba6632000000000000000000000147cb

MIGUEL ÁNGEL CÁRDENAS CEDEÑO
EXPERT TRANSLATOR   45
OF THE SUPREME COURT OF JUSTICE
FOR MEXICO CITY • TEL: 559000 1100

The reason this evidence is deemed to prove my claims is that it involves a public document with full probative value.

**11.-  THE DOCUMENTARY EVIDENCES** consisting of the receipts issued by FSM in favor of TV Azteca, S.A.B. de C.V. and another, which are attached hereto as **Exhibit 11).**

I link this evidence to all the facts of the lawsuit and to the requested precautionary measure, which will prove that MDM earns revenue from broadcasting advertisements during sporting events that FSM has the right to broadcast —most notably, at the time, the Leon Men's Team home games—.

The reason this evidence is deemed to prove my claims is that it concerns precisely the receipts issued by FSM to TV Azteca, S.A.B. de C.V.

**12.-  THE DOCUMENTARY EVIDENCE** consisting of a printout of Tubi's December 18th statement with its respective translation into Spanish, which are attached hereto as **Exhibit 12).**

I link this evidence to all the facts of the lawsuit and the requested precautionary measure, which shall prove that Tubi broadcasts the Leon Men's Team games, interfering with the right of first negotiation agreed upon in favor of FSM under the terms of the Leon Agreement.

The reason this evidence is deemed to prove my claims is that it is the statement made by Tubi to the media regarding the internet broadcasts of the Leon Men's Team home games.

**13.-  THE DOCUMENTARY EVIDENCE** consisting of the record of facts containing evidence of the broadcast of the Leon Men's Team game against Deportivo Toluca; which is attached hereto as **Exhibit 13).**

I link this evidence to all the facts of the lawsuit and the requested precautionary measure, which shall prove that Tubi broadcasts the Leon Men's Team games,

MIGUEL ÁNGEL CÁRDENAS CEDEÑO
EXPERT TRANSLATOR
OF THE SUPREME COURT OF JUSTICE
FOR MEXICO CITY • TEL: 559000 1100

interfering with the right of first negotiation agreed upon in favor of FSM under the terms of the Leon Agreement.

The reason this evidence is deemed to prove my claims is that it involves a public document with full probative value.

**14.- THE DOCUMENTARY EVIDENCE** consisting of the notification delivered by Leon to FSM on February 5, 2025, via Notary Public, and the instructions delivered by said notary; which are attached hereto as **Exhibit 14)**.

I link this evidence to all the facts of the lawsuit and the requested precautionary measure, which shall prove that Leon has expressly recognized the right of first negotiation agreed upon in favor of FSM under the terms of the Leon Agreement.

The reason this evidence is deemed to prove my claims is that it involves a document from Leon, constituting full evidence against it.

**15.- THE DOCUMENTARY EVIDENCE** consisting of the license agreement — or any other agreement that has as its subject matter, among others, the broadcasting rights for the home games of the Leon Men's Team— that Leon and Fox Cable and/or Tubi have entered into.

Under oath, I hereby declare that my clients do not have said agreement of wills in its original form or a certified copy, as they are not party to it and it is not available to them. Therefore, from this moment on, pursuant to Article 89 of the Federal Code of Civil Procedure, which is applicable by extension, I hereby request Your Honor to require Leon to produce the agreement it entered into with Tubi and/or Fox Cable, and by virtue of which it allows either of the latter two to broadcast Leon Men's Team games after the Torneo Clausura 2024 of the Liga MX, especially the Clausura 2025 and/or any other Leon Men's Team games in any other national or international tournament, playing as the home team; with the warning that failure to do so shall result in the assertions made by my clients in this lawsuit being deemed true.

MIGUEL ÁNGEL CÁRDENAS CEDEÑO
EXPERT TRANSLATOR    47
OF THE SUPREME COURT OF JUSTICE
FOR MEXICO CITY • TEL: 559000 1100

I link this evidence to all the facts of the lawsuit and the requested precautionary measure, which shall prove that Leon violated the right of first negotiation provided for in Clause 7 of the Leon Agreement by performing said legal act.

The reason this evidence is deemed to prove my claims is that it is an agreement entered into by a third party other than my clients with Leon, the purpose of which is the same or similar to the Leon Agreement; without Leon having informed, to that effect, MSN of the respective offer, so that MSN could match it.

16.-    **THE DOCUMENTARY EVIDENCES** consisting of the receipts that demonstrate the amounts obtained by Fox Cable and/or Tubi and/or any subsidiary and/or affiliate of said persons, for the marketing of advertising spaces in the games of the Leon Men's Team against Futbol Club Juarez, Club Deportivo Guadalajara and Deportivo Toluca.

Under oath, I declare that my clients do not have this information, nor is it available to them, because they have no relationship with Fox Cable and/or Tubi that would allow them to do so. Therefore, based on Article 89 of the Federal Code of Civil Procedure, which is applicable by extension, I request Your Honor to require Fox Cable and Tubi to, within a peremptory period, produce the documents that evidence the amounts they have obtained as consideration for the marketing of advertising space during the Leon Men's Team games against Futbol Club Juarez, Club Deportivo Guadalajara and Deportivo Toluca; in addition to any amounts obtained, if applicable, for subsequent Leon Men's Team games broadcasted by Tubi (or any other Fox Cable sublicensee); with the warning that failure to do so shall result in the assertions made by my clients in this lawsuit being considered true.

I link this evidence to all the facts of the lawsuit and to the requested precautionary measure, which shall be used to prove the damages caused to MDM, for all the money that it could have obtained from the marketing of said games, in the event that Leon had respected the right of first negotiation provided for in Clause 7 of the Leon Agreement.

The reason this evidence is deemed to prove my claims is that it involves information from Tubi and/or Fox Cable, constituting full evidence against them.

MIGUEL ÁNGEL CÁRDENAS CEDEÑO
EXPERT TRANSLATOR
OF THE SUPREME COURT OF JUSTICE
FOR MEXICO CITY • TEL: 559000 1100

ROGELIO ARTURO ISLAS PEREZ 07/04/25 13:33:51 705a6620636a66320000000000000000000147cb

**17.- THE DOCUMENTARY OF PROCEEDINGS** consisting of every action taken in this trial, insofar as it favors the interests of my clients.

This evidence is linked to all the facts of this lawsuit and to all the statements made in the chapter on precautionary measures, and shall be used to prove its admissibility.

**18.- THE PRESUMPTION OF LAW AND FACT**, in its dual aspect, legal and human, in everything that favors the interests of my clients.

This evidence is linked to all the facts of this lawsuit and to all the statements made in the chapter on precautionary measures, and shall be used to prove its admissibility.

## REQUEST FOR LETTER ROGATORY

Pursuant to Article 1072 of the Commercial Code, I hereby request that a letter rogatory with the inserts be sent to the competent Judge in Los Angeles, California, United States of America, so that Tubi and Fox Cable may be summoned to this trial at the address provided above. I hereby request that my clients be granted a period of no less than 30 business days to submit the respective translations. I also hereby request that the respective letter rogatory be made available to my clients, through any authorized person, for delivery to the Ministry of Foreign Affairs.

## RESERVATION OF RIGHTS

Insofar as Fox Corp. and various of its subsidiaries, affiliates and/or related parties have engaged in unlawful conducts and conducts contrary to good morals, which, regardless of the claims herein, generated damages and losses, my clients expressly reserve the rights that assist them to exercise them against Fox Corp. and/or any of its subsidiaries, affiliates and/or related parties, in the manner and form that is legally appropriate.

For the above reasons;

MIGUEL ÁNGEL CÁRDENAS CEDEÑO
EXPERT TRANSLATOR    49
OF THE SUPREME COURT OF JUSTICE
FOR MEXICO CITY • TEL: 559000 1100

ROGELIO ARTURO ISLAS PEREZ 07/04/25 13:33:51
706a66206336a66320000000000000000000000000147cb
49

ROGELIO ARTURO ISLAS PEREZ 07/04/25 13:33:51
706a66620636a66632000000000000000000000000000147cb

**TO YOU, HONORABLE JUDGE**, I respectfully request:

**FIRST.-** To acknowledge the legal status I hold, in my capacity as general attorney-in-fact for lawsuits and collections of Media Deportes Mexico, S. de R.L. de C.V. and Mexico Sports Distribution, LLC, based on the notarial instruments attached hereto, requesting their return after comparison and verification with the attached photocopies.

**SECOND.-** To acknowledge the procedural domicile indicated and the authorized persons mentioned for the specified purposes.

**THIRD.-** To admit this lawsuit in the manner and form proposed, ordering the co-defendant, Fuerza Deportiva del Club Leon, S.A. de C.V., to receive service of process at the address specified for such purpose, warning it in terms of the law regarding failure to indicate an address within this jurisdiction and to respond to the lawsuit filed against it.

**FOURTH.-** To send a letter rogatory to the competent Judge in Los Angeles, California, United States of America, so that they may provide service of process to the co-defendants Fox Cable Network Services, LLC and Tubi, Inc.

**FIFTH.-** To order the precautionary measure requested, establishing the legally corresponding security for this purpose.

**SIXTH.-** Accordingly, to issue a judgment ordering the defendant to pay and fulfill the claims in this document.

Affirmed under penalty of perjury

Mexico City, February 21, 2025

**ROGELIO ARTURO ISLAS PEREZ**

MIGUEL ÁNGEL CÁRDENAS CEDEÑO
EXPERT TRANSLATOR
OF THE SUPREME COURT OF JUSTICE
FOR MEXICO CITY • TEL: 559000 1100

[Logotype of:]

JUDICIAL BRANCH

MEXICO CITY

**CRYPTOGRAPHIC EVIDENCE - TRANSACTION**

Signed File: lauman-fox-leon-demandafinal.pdf

Intermediate Certifying Authority of the Federal Judiciary Council

Signatory(ies): 1

Page(s): 50

Folio: 761EB2DD-E967-4192-BF35-9D496DFBB032

| Signatories | | | | | Signatures |
|---|---|---|---|---|---|
| Name(s): | ROGELIO ARTURO ISLAS PEREZ | Validity: | In force | Serial number: | 70.6a.66.20.63.6a.66.32.00.00.00.00.00.00.00.00.01.47.cb |
| **OCSP** | | | | | |
| Date: (UTC / Mexico City) | | 02/24/25 19:49:16 - 02/24/25 13:49:16 | | | |
| Name of responder(s): | | OCSP ACI Service of the Federal Judiciary Council | | | |
| Issuer(s) of responder(s): | | Intermediate Certifying Authority of the Federal Judiciary Council | | | |
| Serial number(s): | | 70.6a.66.32.20.63.6a.66.6f.63.73.70 | | | |
| **TSP** | | | | | |
| Date: (UTC / Mexico City) | | 02/24/25 19:49:16 - 02/24/25 13:49:16 | | | |
| Name of the issuer of the TSP response: | | Issuing Entity of Time Stamps of the Judicial Branch of Mexico City | | | |
| TSP certificate issuer: | | Certifying Authority of the Judicial Branch of Mexico City | | | |
| **Digital Stamps** | | | | | |
| 31 ed 25 0c e2 d9 fa a1 61 03 a3 3c dc cf d1 60 19 52 e4 1c f0 f7 6c a2 47 0f ba 99 8f 77 83 07 06 1f e7 c4 55 7e 8e 5c fb 49 24 | | | | | |

I, Miguel Ángel Cárdenas Cedeño, Expert Translator, authorized by the Superior Court of Justice for Mexico City, by resolution published in the Official Gazette dated February 23, 2024, [WTC Mexico City - Montecito 38, Floor 33 Of. 27, Col. Napoles, C.P. 03810, (**contacto@cititraductores.com | Tel. 559000-1100**)] DO HEREBY CERTIFY that the foregoing translation in 51 page is, to the best of my knowledge, true and correct.

Mexico City, April 1st, 2025.

MIGUEL ÁNGEL CÁRDENAS CEDEÑO
EXPERT TRANSLATOR
OF THE SUPREME COURT OF JUSTICE
FOR MEXICO CITY • TEL: 559000 1100